MARY W. DRURY *vs.* WILLIAM H. HERVEY.

Suffolk.   March 10. — May 9, 1879.   MORTON & ENDICOTT, JJ., absent.

If a chattel, sold on condition that, until paid for, no title shall vest in the pur-
chaser, and that, if not paid for as agreed, the seller shall have the right to entei
upon the premises of the purchaser and take the chattel away, is taken to a room
hired by the purchaser in the house of a third person, who has no knowledge of.
his title, the seller, on breach of the condition in regard to payment, has a right
to enter such house in a reasonable manner to get the chattel; but if the pur-
chaser of the chattel is absent, and the wife of the owner of the house, in the
absence of her husband, requests the seller to wait two hours until the purchaser
returns, it is not reasonable for the seller to push the wife aside and enter, and,
if he does so, an action may be maintained against him for an assault, although
he shows the agreement to her, and tells her for what he has come.

If a servant of A. goes to a house to get possession of a chattel, which A. has the
right to take in a peaceable manner, evidence that the owner of the house, im-
mediately after the entrance of the servant, said to a third person, in the hear-
ing of the servant, but not in his presence, that the servant had entered against.
his will and had pushed him aside, and that the servant, who was on his way
up-stairs to get the chattel, said nothing in reply, is incompetent, as an admis-
sion of the truth of the charge, in an action against A. for such assault.

TORT for an assault.   Trial in the Superior Court, before
*Rockwell*, J., who allowed a bill of exceptions in substance as
follows:

In April 1877, the plaintiff, who lived with her husband in
his house in Boston, let two rooms therein, with his consent, to
Heman P. Newton, who furnished and occupied the rooms.   In
July of the same year, Newton procured a lounge from the de-
fendant, a furniture dealer, and signed and delivered to him an
agreement in writing, which provided that the lounge was to be
paid for by weekly instalments; that, until paid for, no title to
the lounge should vest in Newton; and that the defendant should
at all times have access to it, and the place wherein it might be;
and, in case default should be made in the payment of any in-
stalment, the defendant might enter upon the premises of Newton,
and take possession of the lounge, without being liable for a
trespass.

The lounge was taken to the rooms of Newton, and used there
by him, without knowledge on the part of the plaintiff and her
husband of his title thereto.   Newton did not pay for the lounge
as agreed, and after repeated demands upon him for payment,

and his refusal to pay, the servants of the defendant went to the plaintiff's house in the afternoon of November 22, 1877, to get the lounge.

The plaintiff's evidence tended to show that, when the servants went to the house, the plaintiff, her husband being absent, answered the bell, and opened the front door about a foot; that the servants told her who they were, and the object for which they had come, showed her the agreement with Newton, and then asked permission to enter to get the lounge ; that she refused to allow them to do so; and asked them to wait two hours, until Newton, who was then absent, should return; that the servants stepped up into the door, which was still open about a foot, and pushed the door open still further, and as far as they could go in; and that this was done against the will and resistance of the plaintiff. It did not appear that the servants used any more force than was necessary in thus opening the door.

It further appeared that, after the servants got into the hall, the plaintiff opened a door leading from the hall into an adjoining room, and, standing in or near the door, spoke to two visitors who were then sitting in the room and were strangers to the servants; and these persons were allowed to testify, against the objection of the defendant, that the plaintiff stated to them that the servants had shoved her away from the door, and pushed into the house against her will. There was no evidence that, at the time the plaintiff spoke to these persons, the servants were in sight of them, or had seen them, or knew that they were in the house. But these witnesses were allowed, against the defendant's objection, to testify further that they believed that the servants were in the hall and within hearing, because they heard one of them speak immediately after, and saw them go up-stairs for the lounge, and had previously seen them when they came up to the house. It appeared that the servants made no reply to the above statements of the plaintiff; and the servants testified that they did not hear these statements. The judge instructed the jury that they might consider such statements, made by the plaintiff to the visitors, as evidence of an admission of such shoving and pushing of the plaintiff, if the jury were satisfied that the servants heard the statements and did not deny them.

The defendant asked the judge to instruct the jury as follows: ' 1. Under the agreement between Newton and the defendant, the latter and his servants had a right, in a reasonable and proper manner, to enter any premises occupied by Newton to examine or to remove the lounge, if Newton did not pay for it as stipulated. 2. If Newton was a tenant of a part of a house, he and those with whom he did business had the right to pass in and out for all reasonable purposes, and if the defendant had permission or license from Newton to enter his premises to examine or take the lounge, the defendant and his servants had the right, in a peaceable and proper manner, to go to Newton's rooms to get the lounge; and the plaintiff had no right to interfere to prevent them, especially after they had made known their errand to her. 3. If the plaintiff did interfere to prevent them, and was injured in consequence of such interference, she cannot recover if the defendant's servants used no more force than was reasonably necessary to remove the lounge."

The judge refused so to rule; but instructed the jury that the plaintiff, in the absence of her husband, had the same rights to the possession of the premises that he had; that she had a right to close the door, the right to open it wide, or only a foot, or partly, as she saw fit, and to forbid the defendant's servants to enter, and to keep them out by force; and that the agreement with Newton might be considered as evidence that the servants went to the house for a lawful and peaceful purpose, but not as evidence of any right, license or permission to enter the house to get the lounge against the will of the plaintiff.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*J. B. Richardson*, for the defendant.

*M. A. Blaisdell*, for the plaintiff.

AMES, J. If the defendant had a right to take the lounge into his possession, his servants would be justified in entering the dwelling-house in order to exercise that right, provided the entry were made in a reasonable manner, and without a resort to force and personal violence. *McNeal* v. *Emerson*, 15 Gray, 384. As a general rule, such a right is not to be enforced at the expense of a breach of the peace. *Sampson* v. *Henry*, 11 Pick. 379. *Churchill* v. *Hulbert*, 110 Mass. 42. It was properly ruled at the

trial, that, in the absence of her husband, the plaintiff had the same right to the possession that he had. But the defendant contends that, under the terms of his agreement with Newton, he had not merely a right to enter the building in order to take away the lounge, but also to effect his entrance by force, provided he used no more force than was reasonably necessary for that purpose.

We think, however, that the rulings requested by the defend-ant, as to the right of the plaintiff to resist the entrance into her dwelling-house, were properly refused. The judge was not bound to adopt the language used in those requests, and the instructions which he gave were more appropriate to the case as it stood upon the evidence, and were all that the defendant was entitled to ask. His servants, on appearing at the door, informed the plaintiff of the purpose of their coming; but it does not appear that she had any means of knowing that Newton's debt remained unpaid, or that she had any reason to know or believe, other than their un-supported word, that the strangers who were seeking admission had any right whatever to go to Newton's room to take away furniture in his absence. She might well ask them to wait for a short time until she could see Newton on the subject. It does not appear that this request was unreasonable, or that the de-fendant could have lost any right or sustained any inconvenience beyond a brief delay, by yielding to it. Under such circum-stances she had a right to resist their entrance.

But, upon a question as to the admissibility of certain evidence offered by the plaintiff, we find more difficulty. It appeared that, after the defendant's servants had effected their entrance, the plaintiff said to certain visitors in an adjoining room that they had pushed her away from the door, and forced their way into the house against her will. The court ruled that, if they heard what she said, and did not deny it, the jury might consider their silence as evidence of an admission that they had committed the acts of violence which the plaintiff imputed to them. This ruling was erroneous, as the evidence does not indicate that they were bound to make any answer. Silence under an imputation can never be considered as an admission of the truth of the charge, unless the circumstances are such that a denial would naturally be expected, or an explanation of some sort would naturally be

called for. *Boston & Worcester Railroad* v. *Dana*, 1 Gray, 83. *Commonwealth* v. *Harvey*, 1 Gray, 487. *Commonwealth* v. *Kenney*, 12 Met. 235. *Commonwealth* v. *McDermott*, 123 Mass. 440. *Commonwealth* v. *Walker*, 13 Allen, 570. What the plaintiff said was not addressed to them, and cannot be said to have called for a reply. In estimating the proper inference to be drawn from silence, full allowance must be made for the attending circumstances. The defendant's servants were on their way to Newton's apartment to perform the manual labor of carrying away an article of furniture, and it was hardly to be expected, or certainly it was not a matter of course, that, after they had effected an entrance into the house, they should stop on their way to have a conversation, and perhaps an altercation, with the plaintiff, as to the manner of such entrance.

In consequence of this error, a new trial has become necessary.

*Exceptions sustained.*