Filed April 25, 1889.

No. 14,592.

CONWAY v. THE STATE.

CRIMINAL LAW.— *Witness.*—*Accomplice.*—*May Testify for State.*—One jointly indicted with another as an accomplice in crime is a competent witness for the prosecution upon the trial of the latter, if he consents to testify.

SAME.—*Examination of Witness.*—*Objection to Question.*—*Practice.*—An objection to a competent question propounded to a witness does not reach beyond the question to an incompetent answer that may be given in response thereto.

SAME.—*Evidence.*—*Conversation.*—A conversation in the presence of an ac-

Conway v. The State.

cused, and in part of which he participated, is admissible in evidence as a whole.

SAME.—*Statements Tending to Charge Crime.*—*Silence of Accused.*—Where a conversation involving statements tending to charge the accused with a crime takes place in his presence, and he remains silent, when the circumstances are such as to make it natural for him to speak, such conversation is competent evidence.

SAME.—*Determining Competency of Evidence.*—In determining the competency of particular testimony the court is not confined to the testimony of one witness, but may look to other evidence, whether direct or circumstantial.

SAME.—*Admission by Silence.*—A conversation in the presence of the accused, between his companion and another, in which the crime is spoken of and information that may enable the accused to escape is sought, is competent as tending to show an admission by silence.

SAME.—*Hostile Witness.*—*Examination of.*—The method of examining a hostile witness is a matter almost entirely within the discretion of the trial court, and the Supreme Court will not interfere unless a clear abuse of discretion, leading to manifest injustice, is shown.

SAME.—*Suggestive Questions.*—*Pressing Witness.*—Where a witness betrays his hostility to the State, it is proper to permit the prosecution to ask him suggestive questions and to press him with questions designed to compel him to reveal what he knows, even though such questions embarrass him and " place him in an awkward position."

SAME.—*Contradiction of Witness by Evidence of Different Statements.*—Where a witness produced by the State makes statements prejudicial to the prosecution, the State may, under section 507, R. S. 1881—which, by force of section 1796, R. S. 1881, governs in criminal prosecutions—contradict him by evidence of different statements made out of court.

SAME.—*Influencing Witness.*—*Offering to Give Money.*—Evidence of a conversation between the accused and another, in which the former offered to pay the latter " three hundred dollars if he would say that he had done the cutting in self-defence," is competent as an admission, and as showing an attempt to influence a witness to give favorable testimony.

SAME.—*Expert Witness.*—*Cross-Examination of.*—*Hypothetical Question.*—It is proper for counsel for the State, on the cross-examination of an expert witness, to assume facts, within the range of the evidence, which they believe proved, and on this assumption ask for an opinion from the witness.

SAME.—*Criminal Responsibility.*—*Weakness of Intellect.*—Mere weakness of intellect will not shield one who commits a crime; if the will power is not overthrown by disease, and there is sufficient mental capacity to know right from wrong, there is criminal responsibility.

From the Delaware Circuit Court.

*J. Brown, W. A. Brown* and *G. H. Koons,* for appellant.
*L. T. Michener,* Attorney General, *J. H. Gillett* and *W. A.. Kittinger,* for the State.

ELLIOTT, C. J.—The appellant prosecutes this appeal from a judgment sentencing him to prison for the crime of man-- slaughter.

He was jointly indicted with one George Melrose, and the-- latter was permitted to testify as a witness. In this there was no error. At common law the weight of modern authority is, that an accomplice may testify for the prosecution,,. if he consents to do so. A recent writer says : "A few cases decide that an accomplice who has not been indicted is competent; but the great weight of authority raises no distinction between accomplices who have been, and those who have- not been indicted." Law of Witnesses, section 21. But our statute dispels whatever doubt may have existed before its enactment. It radically changes the old and original common law rule and establishes an essentially different policy. It permits the accused to be a witness in his own behalf. It declares that the conviction of an infamous crime- shall not disqualify a witness. It goes further, for it declares that in criminal prosecutions " The following persons are competent witnesses : All persons who are competent to testify in civil actions. * * Accomplices, when they consent to testify." R. S. 1881, section 1798. In civil actions parties may be witnesses, and no witness is disqualified because he conspired with another to commit a tort or assisted him in its commission, and it seems difficult to perceive why, even if the first provision quoted stood alone, an accomplice would not be competent. But it is not necessary to act upon that provision alone, for it must be taken in connection with the other that we have quoted, and, thus taken, no doubt can exist as to the meaning of the statute. The statute declares that all accomplices may testify. It imposes no limitations and creates no exceptions. The courts have no authority to-

do either.  The question, however, is not a new one in this court, for it has always been held that an accomplice is a competent witness.  *Johnson* v. *State*, 2 Ind. 652; *Stocking* v. *State*, 7 Ind. 326; *Ulmer* v. *State*, 14 Ind. 52; *Johnson* v. *State*, 65 Ind. 269 : *Ayers* v. *State*, 88 Ind. 275.  In *Ulmer* v. *State, supra,* and in *Johnson* v. *State, supra,* the witness was jointly indicted with the accused.  In *Stocking* v. *State, supra,* the court said of the testimony of an accomplice that: " It is very true that the evidence of persons standing in such a relation to each other, should be carefully scrutinized by the court and jury.  Yet to exclude it altogether, would often exclude the only means of disclosing guilt.  For this reason, the revised statutes abolished the distinction which the pronouncing of judgment formerly made in regard to a witness that was infamous.  2 R. S. (1852), p. 80, and section 243, p. 83.  What before affected his competence, under that enactment goes only to his credibility."

Alexander Davis, a witness for the State, was asked to detail a conversation which took place, shortly after the fatal wound was inflicted, at the house of Rybolt between himself, Elmer Conway and Charles Conway, the appellant.  The question was competent, and even if the answer had been incompetent, the objection to the question could not be considered as extending to the answer.  An objection to a question does not reach further than the question.  *Gould* v. *Day*, 94 U. S. 405; *Barnes* v. *Ingalls*, 39 Ala. 193.  But we think the answer was not objectionable.  The accused was present, and we can not say that he was not within hearing distance, or that he did not hear what was said.  It is enough, to render testimony of a conversation competent, if the witnesses detail statements tending to charge the accused with the crime, and there are circumstances making it natural for him to speak, and none requiring him to remain silent.  *Puett* v. *Beard,* 86 Ind. 104; *Johnson* v. *Holliday,* 79 Ind. 151; *Blessing* v. *Dodds,* 53 Ind. 95; *Pierce* v. *Goldsberry,* 35 Ind. 317.  An admission by silence may be competent, and yet

not be of such a character as to be entitled to much weight; still, if competent, it must be admitted. *Pedigo* v. *Grimes*, 113 Ind. 148. In the case before us, the accused, it is inferable from the record, participated in part at least of the conversation, and as part of the conversation was admissible, the whole was competent. In deciding that testimony is competent, the court is not confined to the testimony of one witness, but may look to other evidence, whether direct or circumstantial, to determine the competency of the particular testimony.

What we have said as to the testimony of Davis applies to that of the witness Butler, for the accused not only heard the conversation between Butler and Elmer Conway, but participated in it. The testimony of Butler was competent, not solely because it tended to contradict Elmer Conway, but for the reason that, as original evidence, it tended to establish a criminating admission on the part of the appellant. The testimony of Davis and of Butler was competent, even if the accused had taken no part in it. He had joined Elmer Conway at a point not far from the place where the wound was inflicted. Elmer had witnessed the rencounter, he was speaking of it to Davis, he was in company with the accused, and he was seeking to obtain information that might enable the accused to escape. Under these circumstances the silence of the accused, had he been silent, would have entitled the testimony to admission. Of course the declarations of Elmer Conway did not conclude the appellant, but that does not determine the question of their competency. There is some conflict in the cases as to the effect of silence where criminating statements are made, but even under the decisions, such as *Drury* v. *Hervey*, 126 Mass. 519, and *Com.* v. *McDermott*, 123 Mass. 440, which much restrict the rule as elsewhere enforced, the testimony here given was competent as a tacit admission, even if it be conceded that the accused took no part in the conversation. But this concession the record forbids.

Questions intended, in good faith, to refresh the memory of a witness by directing his attention to persons and occurrences, are competent even where the witness is friendly to the party examining him. Dr. Wharton says : " Nor does the rule preclude a party from refreshing the memory even of friendly witnesses when the tendency of the question is to lead the witness to the topic rather than to exhibit the topic to the witness." 1 Wharton Evidence (3d ed.), section 501. If this is the rule where the witness is favorably disposed to the examiner, much the more reason is there for it where the witness is unfriendly. It is, indeed, no more than fair that any witness, friendly or hostile, should have his memory aided by the mention of time, place and circumstances, for this mention might often prevent mistakes and keep a witness from departing from the truth. To be sure, it would be subversive of principle to permit counsel, under the guise of refreshing the memory of a witness, to suggest the desired answers to a willing or friendly witness; but where the witness is a hostile one, as was Elmer Conway, there is no fear of evil result from suggestive questions.

A hostile witness may, as the authorities all agree, be treated in a very different manner from a friendly one. The method of examination is almost entirely a matter within the discretion of the trial court, and the appellate court will not interfere unless there was a clear abuse of discretion, leading to manifest injustice. Law of Witnesses, section 242. The complaint of counsel that the questions propounded to Elmer Conway were such as to " place the witness in an awkward position," and to embarrass him, even if well founded, would not supply a sufficient reason for a reversal. We can not, however, say that the complaint of counsel is well founded in fact, for, after carefully studying the testimony, we are satisfied that the questions sought only the truth, and that they were not asked for the sole purpose of disgracing or embarrassing the witness, although some of the answers may have placed him in an unenviable position. It was en-

tirely proper for the examining counsel to ascertain, if he could, what Elmer Conway actually saw and heard, and to discover and develop his opportunities for acquiring knowledge, and his inclination or disinclination to communicate it.

Elmer Conway was the cousin and the friend of the accused. He was present at the rencounter, and interfered to protect his cousin. He rode with him part of the way to the place where the homicide was committed. He was in company with him shortly after the homicide, at a place not far distant from the place where it occurred, and exhibited a will and purpose to assist him in his flight. His answers to questions during his examination betrayed his hostility to the State and his friendliness to the defendant. He was in every sense an adverse witness, and the court did not err in permitting the prosecutor to ask him suggestive questions, nor in allowing counsel to press him with questions designed to compel him to reveal what he knew.

The provisions of section 507, R. S. 1881, are as follows: " The party producing a witness shall not be allowed to impeach his credit by evidence of bad character, unless it was indispensable that the party should produce him, or in case of manifest surprise, when the party shall have this right; but he may, in all cases, contradict him by other evidence, and by showing that he has made statements different from his present testimony." By force of section 1796, R. S. 1881, these provisions govern in criminal prosecutions. Our decisions have repeatedly enforced these statutory provisions, and have declared that a party may contradict his own witness by evidence of statements made out of court. The only limitation is that the witness shall not be contradicted unless he has given testimony prejudicial to the party by whom he was called. *Judy* v. *Johnson,* 16 Ind. 371; *Hill* v. *Goode,* 18 Ind. 207; *Hull* v. *State, ex rel.,* 93 Ind. 128. In *Hill* v. *Goode, supra,* the court said that two debatable questions are settled by the statute, and that one of them is: " That a

party may prove previous statements of his own witness contradictory to those sworn to on the given trial." Other courts have so decided. *Blackburn* v. *Com.*, 12 Bush (Ky.), 181 ; *Champ* v. *Com.*, 2 Metcf. (Ky.) 17 ; *Dear* v. *Knight*, 1 Fost. & F. 433 ; *Hemingway* v. *Garth,* 51 Ala. 530 ; *Com.* v. *Donahoe,* 133 Mass.407 ; *White* v. *State,* 10 Texas App. 381. In this case the witness did make statements prejudicial to the State, and the case is, therefore, brought fully within the rule.

Proof that a witness did make statements different from those made in court ought not to be accepted as proof of the truth of the matters contained in those statements, for they reach no further in any case than an impeachment of the witness ; but, although they can have no greater effect, still they are competent. The purpose of our statute is to prevent a party from being concluded by the testimony of an adverse witness. Like the act of Parliament of Great Britain, our statute has altered a rule of evidence—a rule, it may be said, in passing, which never received the sanction of philosophical writers—in order to enable the courts to the better accomplish the purpose for which they are organized, that of discovering truth and administering justice. The wisdom of the statutory rule is illustrated by this case. The prosecutor called a witness who was present when the fatal wound was inflicted, and who had stated to others that it was the accused who gave the wound ; but, on the stand, he testified that it was inflicted by another. To hold the State concluded by the statement of the witness made on the stand would check progress toward the discovery of the truth, and make way for a guilty man to escape, where, if the truth were exhibited, it would condemn him. But we need not attempt to vindicate the wisdom of the statute, for we should be compelled to accept the law as it is written, even if we could not approve its policy.

The State was permitted to prove by a witness that he

heard a conversation between the appellant and George Melrose, in which the former offered to pay the latter "three hundred dollars if he would say that he had done the cutting in self-defence, and then he would help him all he could." There was no error in admitting this evidence. It was competent as an admission and as evidence of an attempt to influence a witness to give favorable testimony.

It was proper for the counsel of the State, on the cross-examination of an expert witness of the appellant, to assume facts, within the range of the evidence, which they believed proved, and on this assumption ask for an opinion from the witness. *Louisville, etc., R. W. Co.* v. *Falvey*, 104 Ind. 409, and cases cited; *Louisville, etc., R. W. Co.* v. *Wood*, 113 Ind. 544, op. p. 554.

It must be regarded as settled in this State—and so it is generally held elsewhere—that if the will power is not overthrown by disease, and there is sufficient mental capacity to know right from wrong, there is criminal responsibility. Mere weakness of intellect will not shield one who commits a crime. *Goodwin* v. *State*, 96 Ind. 551; *Wartena* v. *State*, 105 Ind. 445; *Warner* v. *State*, 114 Ind. 137.

There was no plea of insanity, and it may, perhaps, be doubted whether any evidence on that question was admissible, but the appellant, having adduced it, is in no situation to complain that the State answered it. But we need not decide what is the effect to be given to section 1764, R. S. 1881, for, conceding that evidence of insanity is competent without a plea, still no error against the appellant was committed in receiving evidence or in giving instructions. The instructions of the court do not assume that the accused was of sound mind and of weak intellect, although they do inform the jury that no plea of insanity was interposed. The statement of a fact established by the record certainly furnishes no reason for reversing the judgment. Nor was there any error prejudicial to the appellant in informing the jury that the evidence on the subject of mental capacity might be

considered by them for the purpose "of determining the mental status and capacity of the defendant." The evidence gives full support to the verdict.

Judgment affirmed.

Filed April 25, 1889.