## FINCH *v.* STATE OF INDIANA.

[No. 27,981.   Filed October 10, 1944.   Rehearing denied and opinion modified November 13, 1944.]

*T. Ernest Maholm,* of Indianapolis,. for appellant.

*James A. Emmert,* Attorney General, *Frank Hamilton,* First Assistant Attorney General, and *Frank Coughlin,* Deputy Attorney General, for the State.

FANSLER, J.—The defendant was convicted of murder in the first degree and sentenced to be electrocuted.

The murder statute provides: "Whoever purposely and with premeditated malice, or in the perpetration of or attempt to perpetrate a rape, arson, robbery, or burglary, kills any human being, is guilty of murder in the first degree, and on conviction shall suffer death or be imprisoned in the state prison during life."

§ 10-3401, Burns' 1942 Replacement, § 2402-1, Baldwin's Supp. 1941. The indictment is in two counts, the first charging premeditated, malicious murder, and the second killing in the perpetration of or attempt to perpetrate a robbery. The jury returned a verdict of guilty upon the second count, and upon this verdict he was sentenced.

It is contended here that the evidence is insufficient to sustain a conclusion by the jury that the appellant was guilty of killing, and that it is not sufficient to sustain the verdict that the killing was in the perpetration of or attempt to perpetrate a robbery.

The evidence discloses that the victim, who was 68 years of age, lived alone in a small house upon his farm of 60 or 70 acres, located five or six miles from Connersville. He was found dead on a Sunday morning in 1938. He had been killed by repeated blows on the head with some instrument that was threaded on the end, like a bolt or pipe. No such instrument was found on the premises. There were indications that he had been killed early Saturday evening. The room in which he was found was a welter of blood and broken and disarranged household equipment. The house had been locked from the outside and the key thrown in the yard. It might be concluded either that there was a struggle or that the victim had been left badly injured but alive and had groped about the room seeking to help himself. There were numerous stubs of hand-rolled cigarettes on the floor, and household matches of a kind different from those found in the supply on the premises. The defendant smoked hand-rolled cigarettes. The victim did not smoke cigarettes. There was evidence that the deceased ordinarily carried money in a pocketbook from which he paid his current expenses. Neither money nor pocketbook was

found on his person. More than $500 was found in a locked trunk in his bedroom.

It might be reasonably concluded from the evidence that the defendant was, as it is said in his brief, "a general worthless no good character, satisfied with tobacco money, working for deceased now and then for a dollar a day." A taxicab driver testified that on the Saturday night of the murder, the appellant chartered his taxi between 10:00 and 11:00 o'clock, and directed that he be driven to a tavern; that at that time he was clean and sober; that when the tavern was reached he purchased beer for the driver and himself; that he told the driver he wanted to go to a certain house and pick up a suitcase and then be taken to Cambridge City; that he instructed the driver to turn the lights off, and that if there was a light in the house not to stop; that there were no lights on in the house, and he went around the house and returned with a suitcase, and was driven to Cambridge City, where he said he wanted to take a bus. The bus had gone, and they went into a tavern and drank some beer. He asked the driver how much it would cost to take him to Richmond. It was then after midnight. He was driven to Richmond, and got out near the railroad station, and paid the driver $5.20 for the trip, and had quite a little roll of bills.

A woman friend of the appellant testified that he came to her house in Indianapolis the following Sunday morning, and later left to get his suitcase, which he brought to her house; that at the appellant's suggestion they went for a ride with her sister and husband; that the appellant paid for the gasoline with a $5.00 bill; that on Monday he came to her house again, and that they went to a theatre, the appellant paying the admissions; that after the show they were sitting in

her house when a car stopped, and immediately the appellant went out through the kitchen and she saw no more of him; that he left his suitcase, and that an undershirt in the suitcase had two or three blood stains on the front of it.

The appellant was not apprehended for almost five years. He was arrested on another criminal charge in Ohio, and officers from Indiana went to Ohio with a warrant. He waived extradition. In conversation with the officers he first said he knew what they wanted with him, that he was wanted in Indiana on a desertion charge. One of the officers asked him if he knew of anything else he was wanted for, and he said, "for the death of an old man." The officer testified that at first he said he had forgotten the name of the man, but finally named him. The officer said: "Well Charlie, that was a gruesome crime and all the evidence we have leads to you. Now tell us what happened out there and all about the crime." The appellant answered: "I got pretty drunk that evening and I don't remember whether I killed the old man or not." The officer said: "You were out there," and he answered: "Yes—before dark. I went out to borrow $10.00 and when I got out there the old man was out in the front yard. I asked him for $10.00 and he said, 'I haven't got $10.00 but will let you have $8.00.' He said he went in the house and came back and gave it to him." The appellant said he came back to Connersville and could not remember having any trouble with the old man at that time. He said that he intended to leave on a freight train, but did not know how he left; that when he came to himself he was in Indianapolis on Sunday morning. At first he said it was between 4:00 and 5:00 o'clock when he walked out to the victim's home, but afterward said it was between 7:00 and 8:00

o'clock and was dark, and that there was a light in the house. A witness testified that he hauled the appellant to town between 4:00 and 5:00 o'clock on Saturday afternoon from the place where he lived outside the city. Another witness testified that he had a conversation with the appellant in Connersville between 7:30 and 8:00 o'clock on the evening of the murder; that he talked with him for about fifteen minutes; that he had a suitcase with him, and that he was clean and calm. He told the witness that he was going somewhere.

If the jury believed the witnesses who testified as to the whereabouts of the defendant at various hours on the day the crime was committed, his statement that he was drunk and did not remember whether or not he killed the decedent may well have been disbelieved; and yet the jury might have believed he was telling the truth when he said that he went to the home of the victim. If the appellant made a murderous assault, it may well be true that when he left he did not know whether or not he had killed his victim. The appellant said he went to the house to procure a loan, and his detailed statement of what transpired until he got the loan seems entirely inconsistent with his lack of memory as to what transpired thereafter. It might be logically concluded that this false representation, together with appellant's flight from the community and assuming a different name, strongly indicated guilt. Then there are the blood stains on the clothing in his suitcase and his possession and liberal expenditure of a sum of money which the evidence indicates was more than the appellant might have been expected to possess. While these are only circumstances, they point strongly in the direction of guilty knowledge concerning the murder and to an

effort to conceal the facts, which points strongly in the direction of guilt. Human experience indicates that violent murder attacks are not made without motive, and from the facts disclosed no motive is suggested but robbery. The appellant, a man of small means, who earned very little money, was by his own statement in need of funds, and sought out the deceased for the purpose of borrowing. The pocketbook which the deceased habitually carried on his person was missing, and no money was found on his person. It is hard to reconcile this fact with the conclusion that the murder was motivated by any other purpose than robbery. If he had been killed for some other reason, it is but reasonable to suppose that his pocketbook would have been in his pocket even if empty. The time of the crime coincides with the time at which the appellant says he went to the victim's house seeking money. It might well have been concluded that there was no other reason saving a homicidal attack that would have prompted the appellant to leave the country and assume another name.

We think the evidence, though circumstantial, is sufficient to sustain a conviction. It is true that the jury and the trial court must be guided by the rule that to sustain a conviction circumstantial evidence must be such as to exclude every reasonable hypothesis of innocence. This rule has no application upon appeal. The jury is the sole judge as to whether an explanation of the circumstances upon some other theory than that of guilt is sufficiently strong to raise a reasonable doubt of guilt. *Gears* v. *State* (1932), 203 Ind. 380, 180 N. E. 585; *Rosenberg* v. *State* (1922), 192 Ind. 485, 134 N. E. 856, 137 N. E. 53; *Wrassman* v. *State* (1921), 191 Ind. 399, 132 N. E. 673.

Error is assigned upon the overruling of a motion to quash the indictment. It is suggested that the allegations are not sufficiently certain to inform the defendant of the nature of the accusation against him. We find no deficiency in the allegations, and none is pointed out. No other questions are presented.

Judgment affirmed.

NOTE.—Reported in 56 N. E. (2d) 851.