WILLIAM ROBINSON *v.* STATE OF INDIANA.

(No. 576S158.  Filed August 4, 1977.)

*Harriette Bailey Conn,* Public Defender of Indiana, *Lawrence D. Giddings, Bobby Jay Small, David P. Freund,* Deputy Public Defenders, *Jerrilee P. Sutherlin,* Research Assistant, for appellant.

*Theodore L. Sendak,* Attorney General, *Daniel Lee Pflum,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was charged with first degree murder, Ind. Code § 35-13-4-1 (Burns 1975), convicted in a trial by jury of second degree murder, Ind. Code § 35-1-54-1 (Burns 1975) and sentenced to life imprisonment. His appeal presents the following issues:

(1) Whether, as a matter of law, the evidence presented at trial was sufficient to sustain the verdict and more specifically, whether the testimony of the sole eyewitness was sufficiently reliable to identify the defendant as the assailant.

(2) Whether a knife admitted into evidence over objection was relevant to the determination of the defendant's guilt.

(3) Whether it was error for the trial court to deny the defendant's motion for a mistrial based upon allegedly improper voir dire examination by the State of the prospective jurors.

(4) Whether the trial court erred in admitting testimony of the decedent's mother, which related a conversation had between her and the defendant, and revealed that the decedent had told the witness that the defendant had made incestuous overtures to her.

The trial under review was the third for the defendant for this crime, the first having resulted in a hung jury and the second in a conviction and a reversal. *Robinson* v. *State,* (1973) 260 Ind. 517, 297 N.E.2d 409. A complete recital of the evidence is not required, as its sufficiency is questioned only in respect to the credibility of the lone eyewitness to

the killing. A synopsis, however, will be beneficial, inasmuch as it will disclose the context in which our determinations and those of the trial court were made.

The victim, Patricia, was the twenty year old daughter of the defendant. At the time she was killed, she was living with a great aunt in Indianapolis, having moved there to escape her father's abnormal attentions and wrath and to continue her college work. There had been much discord between the defendant and Patricia and between the defendant and Patricia's mother, dating from Patricia's early high school days and centering upon her socializing with boys, which he had forbidden. Shortly following her graduation from high school, Patricia took a job and enrolled in college in Kokomo, where the family resided. She moved out of the defendant's household to get away from the defendant. This had her mother's approval but not that of the defendant. Subsequently, she moved back into the defendant's household to reduce expenses and upon defendant's promise that he would leave her alone and permit her to live as a young adult. The defendant, however, did not comply with his commitment, and Patricia subsequently moved out again  On many occasions, the defendant accosted Patricia, without cause, and made unfounded accusations and called her vile names, sometimes in the home and sometimes in public places. He followed her and chased her into her rented quarters on one occasion and on another occasion into the home of a girl friend. On several occasions, he struck her, and on one occasion he held her and other members of the family at bay with a thirteen inch kitchen knife and said that he would kill anyone who moved. This followed a family argument during which he forbade Patricia's going to Bloomington to school. On another occasion, approximately seven months prior to the killing, the defendant followed Patricia and her girl friend into church where they had gone to attend a Sunday School class, and demanded to know where the two had been the night before. He followed them into the building, grabbed Patricia by the arm and said that she did not have long to live. Ultimately, Patricia moved

from Kokomo into the Indianapolis home of her mother's aunt, Mrs. Ethel Boren, where the murder occurred.

In the early evening of July 21, 1967, Patricia left the Indianapolis residence bound for church. Shortly, thereafter, she ran back into the house with the defendant pursuing her. As they came into the house, the defendant pulled a handgun from his trouser waistband, fired five shots into Patricia and fled.

## ISSUE I

The sole eyewitness to the slaying was the victim's great aunt, then seventy-eight years old and eighty-five years old when she identified the defendant as the assailant at his third trial. This in-court identification was the only direct evidence connecting the defendant with the crime.

The defendant attacks the sufficiency of the identification and urges this Court to employ the same "totality of the circumstances" test used to determine the reliability of in-court identifications which occur subsequent to impermissibly suggestive out-of-court identification procedures. See e.g.: *Neil* v. *Biggers*, (1972) 409 U.S. 188; *Simmons* v. *United States*, (1968) 390 U.S. 377. That test, however, is compelled by the due process clause of the Fourteenth Amendment to the Constitution of the United States in order to exclude identification testimony when the reliability of such has been potentially affected by unreasonably suggestive police or prosecutorial misconduct, *Cooper* v. *State*, (1977) 265 Ind. 700, 359 N.E.2d 532. In this case, the defendant has made no showing that the identification testimony of the witness had been influenced in any way by any State action. Absent such a showing, when eyewitness identification is presented as a sufficiency issue upon appeal, there is no reason to treat it any differently than other evidence.

"When the sufficiency of the evidence is raised as an issue on appeal, this Court will consider only that evidence of probative value most favorable to the State, together with all logical and reasonable inferences which may be drawn therefrom. If such evidence

and inferences would permit a reasonable trier of fact to find the existence of each element of the crime charged beyond a reasonable doubt, the verdict will not be disturbed." *Baum* v. *State,* (1976) 264 Ind. 421, 345 N.E.2d 831, 834, 835.

This Court normally will refuse to weigh the evidence or to pass upon the credibility of the witnesses. *Rosell* v. *State,* (1976) 265 Ind. 173, 352 N.E.2d 750 and cases there cited. A conviction may be sustained upon the uncorroborated testimony of a single witness. *Frith* v. *State,* (1975) 263 Ind. 100, 325 N.E.2d 186; *Jones* v *State,* (1970) 253 Ind. 480, 255 N.E.2d 219. It goes without saying, however, that such evidence must support a conclusion of guilt beyond a reasonable doubt. *Gaddis* v. *State,* (1969) 253 Ind. 73, 251 N.E.2d 658.

Although the witness was of advanced age, she was related to the defendant and had seen him several times prior to the slaying, albeit several years had passed since she had last seen him prior to the murder. The reliability of her identification had been skillfully explored by defendant's counsel on cross examination, and its weaknesses pointed out to the jury.

In *Gaddis* v. *State, supra,* this Court reversed a conviction for insufficiency of the evidence when equivocal eyewitness testimony was the only evidence of guilt. Here, the testimony was not equivocal, although it was perhaps subject to close scrutiny for reliability, owing to the witness' advanced years and some evidence revealing that she had been confused in her identification of the defendant at a prior trial. Additionally, there was considerable circumstantial evidence introduced, as revealed by our prior synopsis, which greatly reinforced the eyewitness' identification.

## ISSUE II

Following the testimony of Patricia's mother relating the aforementioned incident with the knife, the knife was admitted into evidence over the defendant's objection that it was not relevant to the crime charged. However, the testimony concerning the threat made by

the defendant was clearly relevant as tending to prove the elements of premeditation and malice, *Dinning* v. *State*, (1971) 256 Ind. 399, 269 N.E.2d 371; and the introduction of the knife made that testimony more credible and portrayed the force of the threat. By seeing the actual knife used in the threat, the jury could better assess the seriousness of the threat and the credibility of the witness. "The fact that a piece of evidence makes an inference slightly more probable suffices to show its relevance." *Magley* v. *State*, (1975) 263 Ind. 618, 335 N.E.2d 811; *Thomas* v. *State*, (1968) 251 Ind. 76, 238 N.E.2d 20.

## ISSUE III

During the voir dire examination of the jury panel, the trial prosecutor interrogated prospective jurors by hypothetical questions purportedly designed to test their reaction to circumstantial evidence and to evidence inferential of malice. At the end of the State's case in chief, the defendant moved for a mistrial on the basis of those hypotheticals. The motion was denied.

The defendant argues that such questions, together with the answers of certain prospective jurors made in front of the entire panel constituted prosecutorial misconduct which placed the defendant in a position of grave peril to which he should not have been subjected, under the test of *White* v. *State*, (1971) 257 Ind. 64, 272 N.E.2d 312. He relies upon our holding in *Robinson* v. *State*, (1973) 260 Ind. 517, 297 N.E.2d 409. In that case, the prosecutor had asked the following questions on jury voir dire: "If a father killed his twenty year old daughter because she resisted his sexual advances, could you vote for the death penalty then?" We there stated that the hypothetical was prejudicial to the defendant. And that it was "deliberately calculated to prejudice the fair trial guarantees of the defendant, by conditioning the prospective jurors to receive the impending evidence, not with an open mind and resolution to give the defendant the benefit of reasonable doubt but rather with the seeds of

suspicion firmly planted and anxiously awaiting germination." The question was objectionable not because it closely resembled the State's case, but because the State did not introduce any evidence of such an attempted assault. It had been designed to and probably did implant in the minds of the jurors a belief as to a motive for the murder, and evidence of the suggested assault was not forthcoming, although evidence was presented that aroused suspicion of such assaults.

The hypothetical questions objected here are distinguishable from those in the earlier trial, since, as defendant himself points out in his brief, the inferences suggested by the questions were well supported by the evidence. Although we condemned the practice generally of permitting counsel to "brainwash" or attempt to condition the jurors to receive the evidence with a jaundiced eye, the standards set by the *White, supra,* case do not appear to compel our interference, in this case, with the trial judge's considered judgment upon this issue. In view of the evidence adduced, we can not say that the hypothetical questions propounded on voir dire examination placed the defendant in a position of grave peril.

## ISSUE IV

Patricia's mother testified as a prosecution witness and related a conversation she had had with the defendant several years prior to the slaying. The conversation had included her repetition of accusations of the defendant made to her by Patricia. The implication from such testimony was that the defendant had made sexual advances to Patricia. The witness' testimony, however, also included the nature of the defendant's responses to Patricia's accusations, which were equivocal and contained no denial.

Patricia's accusations would not have been admissible as evidence of their truth. But it does not appear that they were so offered or admitted. Rather, they were admitted only as evidence that they had been made and that the defendant had been confronted with them and had tacitly admitted them.

Although the distinction is subtle and subject to abuse, we believe that the admission of the accusations was not error in this case. Of such evidence, Professor McCormick has written the following:

"* * * Whether the justification for receiving the evidence is the assumption that the party has intended to express his assent and thus has adopted the statement as his own, or the probable state of belief to be inferred from his conduct is probably unimportant. Since it is the failure to deny that is significant, an equivocal or evasive response may similarly be used against him on either theory, but if his total response adds up to a clear-cut denial, this theory of implied admission is not properly available.

"Despite the offhand appeal of this kind of evidence, the courts have often suggested that it be received with caution and have surrounded it with various restrictions and safeguards. These are based upon several considerations. First, the nature of the evidence is an open invitation to manufacture evidence, which must be guarded against. Second, constitutional limitations imposed by *Miranda* serve to circumscribe this type of evidence in criminal cases. Third, while in theory the statement is not offered as proof of its contents but rather to show what the party acquiesced in, the distinction is indeed a subtle one; the statement is ordinarily very damaging, and substantial assurances are required that acquiescence did in fact occur." *McCormick on Evidence,* Ch. 26, § 270, p. 652.

Offered other than in conjunction with the defendant's admission, Patricia's accusations would not have been admissible. *Jethroe* v. *State,* (1974) 262 Ind. 505, 319 N.E.2d 133; *State* v. *Harvey,* (1971) 256 Ind. 473, 269 N.E.2d 759. Since the defendant had had an opportunity to deny the accusations when the mother repeated them to him and since his replies were equivocal, the accusations were admissible, in context with the replies, to disclose the defendant's tacit admission.

Silence or an equivocal response to an assertion of fact, which, if true, a reasonable man would be expected to deny, is admissible as evidence tending to show the truth of the assertion, *Conway* v. *State,* (1888) 118 Ind. 482, 21 N.E. 285, if the person is not in custody when the assertion is made. *Garrison* v. *State,* (1967) 249 Ind. 206, 231

N.E.2d 243, *Thomas* v. *State,* (1958) 237 Ind. 537, 147 N.E.2d 577; and the person has an opportunity to speak, *Rickman* v. *State,* (1952) 230 Ind. 262, 103 N.E.2d 207.

Because of the danger of abuse inherent in admitting such out of court declarations, the circumstances should be explored, outside the presence of the jury whenever possible, and such declarations admitted in evidence only after the laying of a foundation evidencing that the "admission" requirements for admissibility have been satisfied. Also, a cautionary instruction would be in order, advising the jury that the accusations of the out of court asserter are admissible not as evidence of their truth but only for the limited purpose of enabling them to determine if the accused, by his conduct upon receiving them, had, in fact, admitted them. It is noted, however, that no such instruction was requested in this case.

We find no reversible error, and the judgment of the trial court is affirmed.

Givan, C.J., and DeBruler, Hunter and Pivarnik, JJ., concur.

NOTE.—Reported 365 N.E.2d 1218.