STEVEN MOTEN *v.* STATE OF INDIANA.

[No. 1177S781.  Filed September 27, 1978.]

*Sheldon H. Cohan,* of Gary, for appellant.

*Theodore L. Sendak,* Attorney General, *Kenneth R. Stamm,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant), a minor 16 years of age when the crime was committed, was charged as an adult and convicted of Felony Murder, Ind. Code § 35-13-4-1 (Burns 1975). He was sentenced to imprisonment for life. He presents the following issues for review:

· (1) Whether the trial court erred in admitting into evidence shotgun pellets and wadding taken from the body of the decedent, over the defendant's objection that a proper chain of custody had not been established.

(2) Whether the trial court erred in admitting as substantive evidence, the out of court statements of several of the State's witnesses.

(3) Whether there was sufficient evidence to sustain the verdict.

(4) Whether the trial court erred in denying the defendant's motion to dismiss.

## ISSUE I

The defendant objected at trial to the admission of State's exhibits E and F on the grounds that a proper chain of custody had not been established. The exhibits consisted of several shotgun pellets and some wadding taken from the body of the decedent. The defendant challenges only the failure of the State to establish that the materials removed from the body of the decedent were the same as those taken to the toxicology lab for testing.

Dr. Somani testified that during the autopsy, which he performed on the decedent, he removed several pellets and some wadding from the decedent's brain. The materials were placed in a sealed envelope in the presence of Lake County Deputy Coroner, Gene Berry. Dr. Somani placed his signature across the seal and gave the envelope to Berry, who took it to the coroner's office. At the trial, Berry identified the

envelope based on the doctor's signature, he having made no markings thereon of his own. Officer Douglas testified that he picked up the sealed envelope at the coroner's office and took it to the police station where it was turned over to Sergeant Brown. Officer Douglas also identified the exhibit on the basis of the doctor's signature, he having made no markings thereon of his own. Sergeant Brown testified that Officer Douglas had given him an envelope which he kept in his possession for two days, after which it was taken to the laboratory for testing. Sergeant Brown's identification of the exhibit was based upon his own initials, which he had placed upon the envelope at the time he received it.

The defendant claims that an insufficient chain of custody had been established to preserve the identity and integrity of the evidence. His claim is premised upon the failure of Berry and Douglas to make any markings upon the afore-mentioned envelope which would have enabled them later to distinguish it from any other envelope marked with the doctor's signature.

The defendant is correct in his contention that the chain of custody rule requires that a foundation be laid showing the continuous whereabouts of the evidence. *Johnson* v. *State*, (1977) 267 Ind. 415, 370 N.E.2d 892. However, the purpose of the rule is the avoidance of any claims of substitution, tampering or mistake. *Wilson* v. *State*, (1975) 263 Ind. 469, 333 N.E.2d 755. "The State need not exclude all possibilities of tampering, but need only provide 'reasonable assurance' that the exhibit has passed through the various hands in an undisturbed condition." *Rinard* v. *State*, (1976) 265 Ind. 56, 351 N.E.2d 20, 23.

The application of the rule is applied with degrees of strictness varying inversely with the potential of the evidence for contamination or misidentification. Where the likelihood of such error is but slight, the evidence will be admitted, and the relative strength of the chain is a matter for the jury to consider. Under the circumstances of this case, the nature

of the exhibits contained in the envelope and the manner in which they were transferred and accounted for, the possibility of the exhibits having been misidentified was minimal, and we see no error in their admission. *See Wilson* v. *State, supra.*

## ISSUE II

Several witnesses were called by the State to testify as to a conversation which they allegedly had with the defendant shortly after the shooting occurred. During the course of their testimony, the State introduced prior written statements made by each of such witnesses, which statements were admitted by the court over the defendant's objection. All of the statements were essentially the same in substance, and concerned the details of a conversation in which the defendant admitted to having participated in the robbery attempt in which the decedent was killed. At trial, each witness admitted to having made a statement, but each denied the truth of the facts contained therein. Walthall Jones and Dwayne Thomas testified that their statements were based upon street talk and not first hand knowledge, while Billy Borders and Jones both testified that they were threatened by the police and gave the statements to avoid being arrested.

The defendant raised several grounds as a basis for objection at trial. The objection argued on appeal is addressed to the use of hearsay as substantive evidence and that such statements had been repudiated by the declarants. We have previously held that an out of court assertion is admissible as substantive evidence at trial, where the declarant is in court and available for cross examination. The ability to cross examine the out of court asserter at trial provides the necessary safeguard allowing for this departure from the traditional hearsay rule. *Patterson* v. *State,* (1975) 263 Ind. 55, 324 N.E.2d 482. We have also recently held that the repudiation of the statement does not render it inadmissible. *Carter* v. *State,* (1977) 266 Ind. 196,

361 N.E.2d 1208. Repudiation is just one factor among many to be considered by the trier of fact in determining the credibility of the witness and the truth of the statement. There was no error committed in the admission of the statements.

## ISSUE III

The next issue raised by the defendant is the sufficiency of the evidence upon which the jury found him guilty of murder in the perpetration of a robbery. The defendant correctly contends that to be convicted of felony murder, the existence of the underlying felony, or attempted felony, must be proven beyond a reasonable doubt. *Pruett* v. *State*, (1968) 250 Ind. 359, 234 N.E.2d 501. In so doing, however, the State may rely on the existence of circumstantial evidence. *Finch* v. *State*, (1944) 222 Ind. 633, 56 N.E.2d 851.

Steven Moten and James Franklin were charged with the shooting death of Earl Taylor. The evidence introduced by the State at their trial discloses that during the evening of December 20, 1976, the victim was found lying dead of a bullet wound to the head, on the sidewalk near his home. Police found a blackjack and the forestock of a shotgun nearby. Several shotgun pellets and wadding were taken from a .12 gauge shotgun. The forestock was also identified as having come from a .12 gauge double barrel shotgun.

The statement of Dwayne Thomas was admitted into evidence and detailed a conversation which took place following the shooting. The pertinent facts were as follows: (Tr. p. 492)

"A. Me, Billy and spude went over to Cathaleen house, and Poochie and Stevie where there and Billy ask them, what happened to the slap jack. Stevie said that he dropped it when Poochie accidentally shot that man. Billy ask them how did it happen, and Stevie said that they had planned to rob him, and when he hit him with the slap jack he fell to the ground, and

Poochie told the man not to move, and when the man tried to get up the gun went off. After the man had been shot they ran over to Poochie's house. Stevie said that they threw the gun away.

\* \* \*

"Q. I now sho you a Gary Police Dept. Photo with a black jack (slap jack) on it and ask you if you have ever seen it before, or one similar to it? When and where and under what circumstances?

"A. Yes I've seen it before, I seen it down at Steven's house, and Poochie had it.

\* \* \*

"Q. Do you know what typed of gun Steven and James Franklin had?

"A. All I know is that it was a double barrell .12 Gauge, sawed off, with rabbit ears."

The statements made by Jones and Borders corroborated most of Thomas' statement.

When reviewing a claim of insufficient evidence, we, as a court of review, are limited to that evidence most favorable to the State along with all reasonable inferences to be drawn therefrom. If from that viewpoint the evidence supports the decision of the trier of fact upon each of the elements of the crime charged beyond a reasonable doubt, that decision will not be reversed. *Baum* v. *State*, (1976) 264 Ind. 421, 345 N.E.2d 831. In making this determination we will neither reweigh the evidence nor judge the credibility of the witnesses. *Beasley* v. *State*, (1977) 267 Ind. 396, 370 N.E.2d 360; *Robinson* v. *State*, (1977) 266 Ind. 604, 365 N.E.2d 1218.

The jury could have inferred from the evidence presented that the defendant and James Franklin had planned to rob the decedent on the night in question and that in the attempt to do so, Franklin shot and killed the decedent. The verdict was sustained by sufficient evidence of probative value as to the existence of an attempted robbery and as to the killing of the decedent in the perpetration of this attempt. *See* *Rogers* v. *State*, (1974) 262 Ind. 315, 315 N.E.2d 707.

## ISSUE IV

As his final allegation of error, the defendant argues that the trial court erred in denying his motion to dismiss, which read in part:

"Defendant assert that the distinction made by the legislature between a murder case and all other cases in legislating upon procedure for the handling of juveniles is in fact an unconstitutional distinction being in violation of the Fourteenth Amendment to the United States Constitution and depriving this Defendant who was sixteen (16) years of age at the time of the alleged commission of the offense charged in this cause of equal protection of the laws and due process of law."

"It is the duty of the court to uphold the acts of the legislature if it can possibly be done, without doing violence to the constitution, and in doing so, every reasonable presumption must be indulged in favor of the legality of the act." *Morgan* v. *State,* (1912) 179 Ind. 300, 303, 101 N.E. 6; *Lawrence* v. *State,* (1972) 259 Ind. 306, 286 N.E.2d 830. Such presumption continues until clearly overcome by a showing to the contrary. *Sidle* v. *Majors,* (1976) 264 Ind. 206, 341 N.E.2d 763. The defendant has failed to make such a showing, in that he has neither cited authority nor presented any argument other than to allege that the classification which withholds the benefits of the juvenile court system from a youth charged with first degree murder denies him equal protection and due process of law. Having failed to support his position with reason and authority, the defendant has presented nothing for our review upon this issue. Ind. R. Ap. P. 8.3(A)(7).

We find no error. The judgment of the trial court is affirmed.

Givan, C.J. and DeBruler, Hunter and Pivarnik, JJ., concur.

NOTE.—Reported at 380 N.E.2d 544.