James FRANKLIN, Petitioner,

v.

Jack DUCKWORTH, Warden, Linley E.
Pearson, Attorney General of Indiana,
Respondents.

No. S 81–68.

United States District Court,
N. D. Indiana,
South Bend Division.

Jan. 29, 1982.

David Capp, Merrillville, Ind., for petitioner.

Linley E. Pearson, Atty. Gen., Ronald D. Buckley, Deputy Atty. Gen., Indianapolis, Ind., for respondents.

## MEMORANDUM AND ORDER

SHARP, Chief Judge.

This cause is before the Court on a petition for writ of habeas corpus filed by James Franklin pursuant to 28 U.S.C. § 2254. Petitioner is presently incarcerated at the Indiana State Prison, Michigan City, Indiana.

Petitioner and Stephen Moten were indicted by the Lake County Grand Jury for murder and felony murder which had occurred on December 20, 1976 in Gary, Indiana. In separate trials, Moten was found guilty by a jury. He appealed and his conviction was affirmed by the Supreme Court of Indiana in *Moten v. State*, 269 Ind. 309, 380 N.E.2d 544 (1978). Petitioner was subsequently tried during the pendency of Moten's appeal and found guilty by a jury. He received a life sentence. His conviction was affirmed by the Supreme Court of Indiana in *Franklin v. State*, Ind., 386 N.E.2d 668 (1979). Petitioner has exhausted his remedies and the entire state court record has been filed here and reviewed.

Petitioner asserts the following grounds for relief:

(1) Denial of due process as convictions were not supported by a sufficient evidentiary basis.

(2) Denial of right to confront witnesses against him.

(3) Denial of due process in that petitioner was placed in a situation where he would have to forego his Fifth Amendment right against self-incrimination in order to refute hearsay accusations against him without the opportunity to confront his accuser.

### I.

The facts underlying this petition relate to the death of one Earl Taylor on December 20, 1976. On that date decedent was found lying on a sidewalk near his home dead of a shotgun wound to the head. The forestock of a shotgun and a blackjack were found lying near the body. Testimony showed that a blackjack, similar to the one found at the scene, had been seen in peti-

tioner's house before the crime. On the morning following the crime Franklin was observed by police at the scene walking back and forth. When questioned by police, Franklin stated he had been in the vicinity the night before, had heard a shot and had seen two subjects fleeing the scene.

At trial the State called three witnesses who were acquaintances of Franklin and Moten who had previously given individual written statements to the police. These statements related to conversations which had taken place following the crime at a meeting the three had with Franklin and Moten. Each of the three, when asked essentially the same questions they had answered in their written statements, gave answers that conflicted with those written statements.

Dwayne Thomas was questioned on direct examination by the state about an incident which took place the day after the crime at the home of one Kathyleen Calamese. (R. 217–19). The state then determined that Thomas' in-court testimony was in conflict with a written statement that Thomas had previously given to the Gary Police Department and sought to introduce the same. (R. 220).

A hearing was conducted outside the presence of the jury on the admissibility of Thomas' statement. The trial court ruled that portions of the statement were hearsay but admissible as a tacit admission. (R. 230). The court ruled that the entire statement of Thomas was admissible pursuant to *Patterson v. State*, 263 Ind. 55, 324 N.E.2d 482 (1975).

Thomas' statement was then read to the jury. (R. 239–45). The relevant portions are as follows:

NOTE: This and the following excerpted testimony make reference to nicknames of various people. For convenience the actual names are supplied paranthetically.

Q. Would you please tell me in your own words, just what you know about a homicide that occurred on December 20, 1976, in front of 2369 Connecticut Street, Gary, Indiana?

A. Me, Billy (Billy Borders) and Spude (Walthall Jones) went over to Kathyleen house, and Poochie (James Franklin) and Stevie (Steven Moten) were there and Billy ask them, what happened to the slapjack. Stevie said that he dropped it when Poochie (James Franklin) accidently shot that man. Billy ask them how did it happen, and Stevie said that they had planned to rob him, and when he hit him with the slapjack he fell to the ground, and Poochie (James Franklin) told the man not to move, and when the man tried to get up the gun went off. After the man had been shot they ran over to Poochie's (James Franklin) house. Stevie said that they threw the gun away. (R. 239).

A similar series of procedural events transpired during the testimony of Billy Don Borders, Jr. After a hearing outside the presence of the jury, the Court ruled that portions of the statement of Borders fell within an exception to the hearsay rule and that the whole statement was admissible under *Patterson*. (R. 271–281). This whole statement was then admitted as State's Exhibit No. 13 (R. 293) and read to the jury by the trial judge. (R. 294–300).

The most relevant portion of this statement follows:

Q. Would you please tell me in your own words, just what you know about a Homicide that occurred on December 20, 1976, in front of 2369 Connecticut Street, Gary, Indiana?

A. I went over to my cousin Kathyleen's house, and Poochie (James Franklin) and Bubby (Steve Moten) were there. I ask Poochie (James Franklin) where was the slapjack at, and he told me that he had lost it. I was talking to Bubby, (Steve Moten) and he told me what had happened. He said, first he said that he had the slapjack, and then he said that he gave it to Poochie (James Franklin) and that Poochie (James Franklin)

knocked the man down with it. He said that Poochie (James Franklin) put the gun up to him and that it accidentally went off. They then ran.

Q. Did Bubby (Steve Moten) tell you if Poochie (James Franklin) said anything to the man? and if so what?

A. Yes, Bubby (Steve Moten) said that Poochie (James Franklin) told the man, "If you move I'll kill you." (R. 293)

Again, the direct examination of Walthall Jones followed similar lines. Jones' statement, absent the boxed portions, was admitted as State's Exhibit No. 14. (R. 324) This statement, minus the deletion, was also read to the jury by the trial judge. (R. 325–329).

Two portions of this statement highlight the error urged on this petition:

Q. Can you tell me in your own words above (sic) a conversation that was held at Kathyleen house a few days after the murder?

A. Billy ask Poochie (James Franklin) where was the blackjack, because he wanted to use it. Poochie (James Franklin) said that the Police got it. Then Billy said, "did yall kill that man", and they started laughing. Then he ask Steven Moten did he kill that man. Steven said naw, that Poochie (James Franklin) shot him. After that we left.

Q. Did you hear Steven Moten, or James Franklin say anything else about the murder?

A. He just say to me, that him and Poochie (James Franklin) killed that man. (R. 324)

Kathyleen Calamese, at whose house the above conversations allegedly occurred, was the State's next witness. She too had given a statement to the police, but it was not admitted into evidence. Portions were used by the state for impeachment (R. 325) and by the defense. (R. 354–55). This witness recalled a conversation in which James Franklin denied the accusations made to him. (R. 350–51).

It is established that the statements related by these witnesses were made by Moten. Franklin was present at the time.

■ The Supreme Court of Indiana addressed the admission of these statements. Indiana recognizes an exception to the traditional hearsay rule developed in *Patterson v. State*, 263 Ind. 55, 324 N.E.2d 482 (1975). The *Patterson* rule is that a prior statement of a witness is admissible, not only for purposes of impeachment, but also as substantive evidence, provided the out of court declarant is present at trial for cross-examination. *Id.*, 324 N.E.2d at 484–485. The rationale behind the rule being that the dangers inherent in admitting hearsay testimony are obviated if the declarant can be cross-examined. *Smith v. State*, Ind., 400 N.E.2d 1137 (1980). The court stated that the *Patterson* rule does not extend to the situation where a co-defendant has made a statement inculpating the other co-defendant. Such a statement would be beyond the *Patterson* exception because the declarant would not be available for cross-examination at the time the evidence was introduced. *Id.*, 400 N.E.2d at 1141.

In this case the Supreme Court of Indiana, adopting a like rationale, found that the previously quoted statements were not admissible hearsay under the *Patterson* rule because the declarant Moten was not available for cross-examination. The Court did find that the statements were admissible to show Franklin has been confronted with the accusation and had failed to deny it. The conclusion being that Franklin's failure to deny or otherwise respond to Moten's accusatory statement was evidence from which the jury could infer that he adopted or tacitly admitted the statement. *Franklin*, 386 N.E.2d at 670. The Supreme Court of Indiana reasoned that the witnesses whose statements were admitted into evidence were present and subject to cross-examination, therefore, their admission did not deny Franklin the right to confront his accusers. *Id.*

## II.

The principal issue raised here is whether the admission into evidence of the three

hearsay statements which recounted an accomplice's inculpatory accusation denied the petitioner his Sixth and Fourteenth Amendment rights. Underlying this issue is the relationship between the Confrontation Clause and the hearsay rule with its many exceptions.

 The Sixth Amendment's Confrontation Clause was made applicable to the states through the Fourteenth Amendment in *Pointer v. Texas*, 380 U.S. 400, 403–405, 85 S.Ct. 1065, 1067–1068, 13 L.Ed.2d 923 (1965). Although rules of hearsay and confrontation overlap, they are not equivalents. *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). Justice Stewart recognized "that the Sixth Amendment's Confrontation Clause and the evidentiary hearsay rule stem from the same roots. But this Court has never equated the two, and we decline to do so now." *Dutton v. Evans*, 400 U.S. 74, 86, 91 S.Ct. 210, 218, 27 L.Ed.2d 213 (1970). The Supreme Court has emphasized that the Confrontation Clause reflects a preference for face to face confrontation at trial and that a primary interest secured by the provision is the right of cross-examination. *Ohio v. Roberts*, 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980); citing *California v. Green, supra*, at 156–157, 90 S.Ct. at 1934, and *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965). In short, the clause envisions:

> [a] personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief. *Mattox v. United States*, 156 U.S. 237, 242–243, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895).

These means of testing accuracy are so important that their absence at trial "calls into question the ultimate integrity of the fact finding process." *Ohio v. Roberts, supra*, 448 U.S. at 64, 100 S.Ct. at 2537; quoting *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973).

 The basic rule against hearsay is replete with exceptions that vary among jurisdictions as to nature, number and detail. These exceptions generally rest on fundamental values and notions which provide indicia of reliability and trustworthiness as to satisfy the Sixth Amendment. Many exceptions result from common sense recognition of basic characteristics of human nature and rely on that for evaluating the truth of the hearsay statement. For example, spontaneous exclamations are admissible on the assumption that when a person is in the instant grip of pain or excitement he ordinarily loses the capacity of reflection necessary for fabrication. Similarly, confessions and other declarations against interest are admissible on the assumption that men do not state facts contrary to their own interests in the course of events. Regardless, the trier of fact remains the ultimate judge of the reliability of the evidence ruled admissible.

 The jurisprudence of the State of Indiana contains the common law exception to the hearsay rule of the adoptive or tacit admission. The tacit admission exception as developed in Indiana provides that silence or an equivocal response to an assertion of fact which if true, a reasonable man would be expected to deny, is admissible as evidence tending to show the truth of that assertion, *Conway v. State*, 118 Ind. 482, 21 N.E. 285 (1888), if the person is not in custody when the statement is made, *Thomas v. State*, 237 Ind. 537, 147 N.E.2d 577 (1958), and the person has an opportunity to speak, *Rickman v. State*, 230 Ind. 262, 103 N.E.2d 207 (1952). The safeguards in such a rule are that the circumstances must be such that the charge was heard by the accused, and understood, and that the accused would naturally be expected to deny the charge. *Robinson v. State*, Ind.App., 309 N.E.2d 833 (1974). Thus, when an accusation is made in an individual's presence and his reply or conduct are equivocal, the

accusation and the reply are admissible as a tacit admission. 4 Wigmore § 1071 (J. Chadbourne Ed. 1972). However, the accusation is not admitted for the truth of the matter asserted, rather it is admitted to show that it has been made and that when confronted with the accusation the individual tacitly admitted it through a failure to respond. *Robinson v. State*, 266 Ind. 604, 365 N.E.2d 1218 (1977). Otherwise, the accusations would be inadmissible hearsay, if offered other than in conjunction with the individual's admission. Accordingly, this exception is limited to testimony about conversations heard or conduct seen by the witness. Here where the jury received no limiting instruction, the assumption must be that the jury considered the testimony as evidence of the truth of the matter asserted. *Jethroe v. State*, 262 Ind. 505, 319 N.E.2d 133, 138 (1974). Upon proper request it would have been the duty of the trial court to instruct the jury regarding the purpose of such testimony, *Diamond v. State*, 195 Ind. 285, 144 N.E. 466 (1924). However, where the defendant failed to offer such an instruction and did not object to its absence, it is waived. *Robinson v. State*, 262 Ind. 463, 317 N.E.2d 850, 852 (1974). The federal courts have adopted a like formulation of the tacit admission exception as found in *Sparf v. United States*, 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343 (1895).[1] The Federal Rules of Evidence also recognize a similar exception. See F.Rule of Evid. 801(d)(1).

 In the habeas corpus context the admissibility of evidence is a matter of state law and unless there is a denial of fundamental fairness or a specific constitutional right, it is not cognizable. *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *United States ex rel Bibbs v. Twomey*, 506 F.2d 1220, 1222 (7th

Cir. 1974), *cert. den.*, 429 U.S. 1102, 97 S.Ct. 1126, 51 L.Ed.2d 551 (1977). An error in a state trial does not rise to the level of a Fourteenth Amendment violation unless the error infected the entire trial so as to make it fundamentally unfair. *Donnelly v. De-Christoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *Cupp v. Naughten*, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); *Bibbs v. Twomey*, at 1223. Nor has the Confrontation Clause ever been held to bar admission into evidence of every relevant extrajudicial statement made by a non-testifying declarant. *Parker v. Randolph*, 442 U.S. 62, 73, 99 S.Ct. 2132, 2139, 60 L.Ed.2d 713 (1979); *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Although evidence may be admissible under an exception to the hearsay rule yet still violate the Confrontation Clause, *California v. Green*, 399 U.S. at 155–156, 90 S.Ct. at 1933, such violations occur only on rare occasions. *United States v. King*, 613 F.2d 670, 673 (7th Cir. 1980).

The Supreme Court of the United States held in *Bruton* that admission of a co-defendant's confession in a joint trial violated the petitioner's right of cross-examination because of the substantial risk that the jury would consider, despite instructions to the contrary, the extrajudicial statements in determining petitioner's guilt. In *Bruton* the court carefully limited its decision to those situations in which the right of cross-examination had been violated because the co-defendant's extrajudicial statement was inadmissible hearsay:

> We emphasize that the hearsay statement inculpating petitioner was clearly inadmissible against him under traditional rules of evidence .... There is not before us, therefore, any recognized exception to the hearsay rule insofar as petitioner is concerned and we intimate no view whatever that such exceptions nec-

---

1. To this Judge, no less than under the facts of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) silence is "insoluably ambiguous." *Id.*, at 617, 96 S.Ct. at 2244. Justice Musmanno of the Pennsylvania Supreme Court aptly wrote:

 "[the tacit admission rule] rests on the spongy maxim, so many time proved unrealistic, that silence gives consent. Maxims, proverbs and axioms, despite the attractive verbal packages in which they are presented to the public, do not necessarily represent universal truth." *Commonwealth v. Dravecz*, 424 Pa. 582, 227 A.2d 904, 906 (1967).

essarily raise questions under the Confrontation Clause. *Bruton v. United States*, 391 U.S. at 128, n. 3, 88 S.Ct. at 1623 n. 3.

The rationale of *Bruton* is thus expressly inapplicable here. *United States v. Steel*, 458 F.2d 1164 (10th Cir. 1972); *Campbell v. United States*, 415 F.2d 356, 357 (6th Cir. 1969). However, the question specifically reserved in *Bruton* and presented here is whether the admission of these extrajudicial statements under an exception to the hearsay rule violated petitioner's constitutional rights.

■ The essential elements for a tacit admission were clearly established in this case. The petitioner was present when Moten accused him of shooting a man in the course of a robbery. Petitioner's only reply was to laugh. The circumstances were such that the accused would naturally deny such a statement. The nature of the statement is that it would naturally be denied and there was opportunity for the denial. However, petitioner in a non-custodial setting with friends made no denial of this accusation. This was a thorough and correct application of the tacit admission doctrine.

*Dutton v. Evans, supra*, is basically a decision in the realm of constitutional method. It provides that the test for admission of hearsay testimony under the Confrontation Clause is not whether there was an opportunity for full and complete cross-examination, but whether there are adequate indicia of reliability to justify its placement before the jury, even though there is no contemporaneous confrontation of the declarant. *Dutton, supra*, 400 U.S. at 89, 91 S.Ct. at 219; *Ohio v. Roberts, supra*, 448 U.S. at 65–66, 100 S.Ct. at 2538; *United States ex rel Haywood v. Wolff*, 658 F.2d 455, 468 (7th Cir. 1981).

There are numerous indicia of reliability present in these written statements which were admitted and read to the jury. First, these statements were given under circumstances intended to impress upon the witness the importance of telling the truth. These were not casual statements made in an informal setting. These statements were taken at the police station by two police officers who immediately committed them to writing and the declarant then read and signed the statement as accurate. The declarant and police officers were aware of the serious nature of the crime under investigation and the possibility that these statements might be used in a court proceeding. Also, these were trained police officers acutely aware of the necessity of accurately preserving a witness' recollection. Secondly, these statements were voluntarily given under no threat of prosecution or grant of immunity. Nor did these witnesses have any motive to falsify their statements for none were in any way implicated in the crime. And the consistency of these three separate statements reflects on accuracy in the recollection. Finally, the statements are corroborated by the physical and circumstantial evidence in the case. A blackjack was found at the scene of the crime which was similar to one which had been seen in the presence of the petitioner. These statements recount how a blackjack was dropped at the scene of the crime. Also, the cause of death, a gunshot wound, is consistent with these statements and the facts.

■ Neither the Sixth nor the Fourteenth Amendment is violated when hearsay evidence bearing sufficient indicia of reliability is admitted into evidence. The Court must conclude that in light of the substantial indicia of reliability present here this application of the tacit admission exception to the hearsay rule does not violate the petitioner's Sixth or Fourteenth Amendment rights.

Petitioner's final challenge is to the sufficiency of the evidence to support his conviction. The standard of review enunciated by the Supreme Court of the United States is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, as followed in *Jacks v. Duckworth*, 651 F.2d 480 (7th Cir.

1981), this Court concludes that the record demonstrates that "rational triers of fact" could have found petitioner guilty beyond a reasonable doubt.

Viewed in the light most favorable to the prosecution, the evidence established that on December 20, 1976, the victim was found dead in Gary, Indiana. Petitioner, when questioned near the scene the day after the incident, stated that he had been in the vicinity the night before, heard a shot, and saw two subjects flee. (R. 372).

Three individuals gave written statements which recounted an accomplice's remark that he and petitioner had shot a person in an attempted robbery. In view of this evidence and the other circumstantial evidence, the Court concludes that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Therefore, in light of the foregoing, the petition for a writ of habeas corpus is DENIED and this cause is DISMISSED.

SO ORDERED.