Nolan L. JAMES, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 1–984 A 224.

Court of Appeals of Indiana, First District.

Aug. 14, 1985.

Robert Canada, Evansville, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant-appellant, Nolan L. James (James), was convicted of child molesting under IND.CODE 35–42–4–3(b), a Class C felony, by a Vanderburgh Circuit Court jury. From a sentence of five years, with probation and work release, he appeals.

We reverse.

## STATEMENT OF THE FACTS

On May 9, 1983, M.J., age ten years, made a taped statement to a police woman stating she was sexually molested by her father, defendant Nolan L. James. The statement disclosed that she lived with James, her mother Vickie, and a brother, age seven years. Her father, she related, had fondled her private parts and had induced her to fondle his private parts regularly over a period of five years. At James' request, some of the alleged fondling by M.J. included masturbation and acts of fellatio. On April 21, 1983, at 6:30 a.m., M.J. stated he came to her room in the home, took off his clothing, took off her clothing and wanted her to touch his penis. She did not want to, but he seized her hand and forced her to touch it, though she resisted. He also touched her vaginal area. She screamed, and her brother woke up as James hurriedly dressed and left the room. Previously she had been afraid to tell anyone because her father had said she wouldn't live if she did. However, on this occasion she did tell her mother, Vickie, who accosted James. James denied the act and said that M.J. was lying. M.J. told this story to her mother, foster parents, and the police woman. James was charged on the facts which occurred on April 21.

However, at trial, M.J. admitted to making the statement, but denied that it was true. The taped statement was then admitted into evidence under the *Patterson* rule. M.J. first told her brother she had lied, then told her mother. She also denied the truth of the statement to a clinical psychologist with whom she was in counsel. Her in-court testimony revealed that the source of the story was from two neighbor girls, ages eight and six years, who had told her that their uncle had similarly molested them. M.J. stated she told her mother this story because she did not think her mother and father loved her and that her mother did not love her father. She denied being afraid of her father or having been coerced by him to change her testimony.

At trial, Vickie testified that M.J. had told her that James had molested her. Vickie was convinced at the time, but at trial did not feel that he had. However, she admitted to making an out of court statement to the police wherein she allegedly stated that James admitted to the fondling, but denied the acts of fellatio. She stated that her answer was misinterpreted and it was meant that James did not admit to the fondling, but merely never denied it in her presence. She additionally stated that she told the grand jury, sitting in August, that M.J. had repudiated her story on June 16, 1983.

The neighbor children and their mother denied telling M.J. any story about an uncle molesting them.

## ISSUE

The only issue is whether substantial evidence of probative value was presented from which the jury could infer that the repudiated statement admitted under the *Patterson* exception to the hearsay rule was credible.

## DISCUSSION AND DECISION

Parties do not contend on appeal that the acknowledged out of court statement made by M.J. was inadmissible, or that it could not be used as substantive evidence to be utilized by the jury in performing its function as a fact finder. *See Patterson v. State,* (1975) 263 Ind. 55, 324 N.E.2d 482. The argument here centers around the

holding in *Peckinpaugh v. State,* (1983) Ind., 447 N.E.2d 576. There the court said:

"Acknowledgment of the statements' admissibility and the jury's capacity to utilize the statements in performing its fact finding responsibility does not end our inquiry. As was demonstrated in *Watkins v. State,* (1983) Ind., 446 N.E.2d 949 (No. 978S198), evidence admitted under the *Patterson* exception to the hearsay rule, standing alone, is not sufficient to sustain a conviction. In *Watkins* we examined all of the evidence in the record to determine if there was direct or circumstantial evidence from which the jury could disbelieve Debra Cunningham's in court testimony and credit her out of court statements, which she had repudiated and which implicated Watkins. We found substantial evidence of probative value in the form of an excited utterance, the substance of which supported the out of court statements, and depositional testimony, which also supported the out of court statements and additionally, was taken under oath and subject to cross examination. In performing this task, we adhered to our traditional standard of review with respect to sufficiency claims, and we followed earlier decisions in which the record revealed evidence, direct or circumstantial, from which the trier of fact could reasonably credit the out of court statement(s). *Franklin v. State,* (1979) 270 Ind. 418, 420–21, 386 N.E.2d 668, 669–70; *Moten v. State,* (1978) 269 Ind. 309, 312–13, 380 N.E.2d 544, 546–47; *Rogers v. State,* (1978) 268 Ind. 370, 375–76, 375 N.E.2d 1089, 1091; *Montgomery v. State,* (1982) Ind.App., 439 N.E.2d 646, 648; *Foor v. State,* (1977) 172 Ind.App. 618, 622–23, 360 N.E.2d 1273, 1275–76; *Lloyd v. State,* (1975) 166 Ind.App. 248, 255, 335 N.E.2d 232, 237–38 (trans. denied)."

*Id.* at 578.

*Peckinpaugh,* which Justice Prentice acknowledged to be "a close case", involved a father's criminal deviate conduct and the molesting of his minor children. At trial the minor victims repudiated their out of court statements which were then admitted under *Patterson.* These statements constituted the only evidence of corpus delicti and identification. After making the above quoted statement, the court found corroboration in: (1) flight; (2) independent evidence consisting of defendant's admissions that he had sexually abused all of his children, prior complaints of children, and attempts to fondle others including the children's friends; and (3) intimidation of the minor victims to change their story. Each of these components supported the *Patterson* statements. The court concluded:

"We have related this detailed account of the evidence to illustrate that, despite the circumstantial and direct contradictions and corroborations, the jury, through sifting and weighing all of the evidence and by drawing reasonable inferences therefrom, could reasonably have concluded that Robert and Robin's out of court statements were more credible than their in court testimony. Under our standard of review, the record supports a reasonable inference that the defendant fled from the charges and intimidated the victims. Moreover, it discloses a damaging admission by the defendant with respect to his prior sexually perverted conduct and supports a reasonable inference that the victims had told the truth in their out of court statements—albeit for ulterior purposes, but regretted having done so and recanted in late summer, 1980, at which time Donald took Jamie away, notwithstanding their having revealed their father's misconduct at his bidding.

Although we reject Defendant's claim of insufficient evidence, we hasten to add that, because a criminal conviction could not be sustained if dependent upon repudiated hearsay evidence admitted under the exception of *Patterson v. State, supra* standing alone, the State must exercise caution when utilizing such evidence. When *Patterson* evidence which has been repudiated in court by the declarant is relied upon to establish any essential allegation of the charge, there must also be present substantial evidence of proba-

tive value from which the trier of fact may reasonably infer that the out of court statements are credible. *Watkins v. State, supra.* The standard was met in this case."

*Id.* at 581.

The State contends that corroborative evidence exists in the present case. We will discuss it in turn.

1. The State argues that Vickie made an out of court statement to officers that James admitted to her that he had fondled M.J. The truth of this statement was denied by Vickie at the trial. The out of court statement is as follows:

"Q. Did your husband ever admit to you that he did this"

A. He admitted to the fond ... let's go back to some dates.

Q. Okay.

A. Uh, Tuesday, last Tuesday, we had a hearing.

Q. That was what date?

A. The tenth.

Q. Of May?

A. M-m-h-m.

Q. Okay.

A. And he had called to see how that went and I was angry and I told him that he better get himself an attorney and I told him that he had several charges against him and I had asked about the oral sex part that [M.L.] didn't say anything to me about it.

Q. What did he say?

A. He denied the oral sex but he did not the other.

Q. The fondling.

A. The fondling, right."

Record at 163.

Vickie's in-court testimony was that she had misunderstood the question, and that James had never admitted to her that he had fondled M.J. Further, she had never asked him whether or not he did. The main issue was the oral sex, and he denied this. Vickie also stated that the incompleted word "fond ..." on the tape occurred when she realized her answer was incorrect. Different parts of her statement show that he denied it at all times. She also stated that at the initial confrontation on April 21 there was an emotional scene, and amid shouting and screaming he said, "There is no sense in replying, 'cause you're going to believe her anyway".

■ The corroborative evidence to show that the out of court statements are credible thus consists of a second layer of a *Patterson* statement. Vickie's in-court testimony flatly denied any admission by James to the fondling, while the out of court statement could indicate he admitted such. We do not perceive that the substantial evidence of probative value required by *Peckinpaugh* may consist of a second *Patterson* statement, which of itself requires corroboration.

■ 2. Does Vickie's in-court testimony that she never heard Nolan deny the fondling, even though she never asked him, amount to a tacit admission of guilt which would satisfy the rule in *Peckinpaugh* as to the corroboration of M.J.'s *Patterson* statement? Generally, the law in Indiana is settled that where a charge is made in the presence and hearing of an accused who is not in custody, his silence or failure to contradict or explain the statement may be shown as being in the nature of an admission as to the truth of the statements; this is so provided circumstances are such as to afford him an opportunity to speak and such would naturally call for some action or reply from persons similarly situated. The same result flows from a false explanation. *Franklin v. State,* (1979) 270 Ind. 418, 421, 386 N.E.2d 668; *Robinson v. State,* (1977) 266 Ind. 604, 365 N.E.2d 1218; *Diamond v. State,* (1924) 195 Ind. 285, 144 N.E. 466. Such evidence of itself has been held to be insufficient to justify a conviction. *Diamond, supra.* It must also be clear that the defendant heard all that was said. *Diamond, supra.* Such evidence is suspect and should be received with caution. Additionally, substantial assurances are required that acquiescence to the truth

of the statement did in fact occur. *Robinson, supra.* In the case at bar, there was no clear evidence that Vickie accused James or asked him about the molestation other than the oral sex, which charge was dismissed after a hung jury in the first trial. Furthermore, M.J. stated in her *Patterson* statement that when her mother accused James of the molestation, he denied it.

■ 3. The State next argues that James failed to satisfactorily establish a possible explanation for the origin of M.J.'s repudiated statement, but cites no authority which imposes on a criminal defendant any duty to do so. *Peckinpaugh* establishes that in addition to the repudiated *Patterson* statement, "there must *also* be present substantial evidence of probative value from which the trier of fact may reasonably infer that the out of court statements are credible" to sustain the conviction. The State's argument is meritless.

■ 4. The State finally argues that the graphic and detailed description of the act contained in the repudiated statement, as made by a child of tender years, lends credibility to the statement. This argument presupposes that the repudiated *Patterson* statement can be corroborative of itself. A careful reading of *Peckinpaugh* states:

> "[E]vidence admitted under the *Patterson* exception to the hearsay rule, *standing alone,* is not sufficient to sustain a conviction.... [There must *also* be present] substantial evidence...."

*Id.* at 578.

Such statements indicate that the corroborative evidence must be evidence independent of the *Patterson* statement. Thus, the statement of itself, regardless of its content, is insufficient.

■ Returning to *Peckinpaugh,* the measure of sufficient evidence is stated as follows:

> "When *Patterson* evidence which has been repudiated in court by the declarant is relied upon to establish any essential allegation of the charge, there must *also*

> be present substantial evidence of probative value from which the trier of fact may reasonably infer that the out of court statements are credible."

*Id.* at 581.

An examination of the authorities cited and relied upon in *Peckinpaugh* reflect the following as sufficiently corroborative evidence. In *Watkins, supra,* there was independent evidence of an excited utterance and depositional evidence wherein an eyewitness account was given upon cross-examination by defendant's counsel. In *Franklin, supra,* the independent corroborative evidence was defendant's failure to respond to an accusation; the corpus delicti; weapons seen in defendant's house; defendant seen walking back and forth at the scene of the crime the next morning; and defendant admitting being at the scene and seeing subjects flee. In *Moten, supra,* a companion case of *Franklin,* in addition to the evidence of the corpus delicti, there was a blackjack, forestock of a .12 gauge shotgun, and wadding and pellets taken from the body of the shotgun, all of which corresponded to three *Patterson* statements. *Rogers, supra,* contained testimony from eyewitnesses to support the *Patterson* statements. *Montgomery, supra,* contained a great deal of corroborative evidence. Here, all that the *Patterson* statement added was an agreement and intent. In *Foor, supra,* much of a drug purchase was observed by officers directly. Finally, in *Lloyd, supra,* the *Patterson* statement was supported by the defendants' possession of the stolen goods.

As noted, the facts in *Peckinpaugh,* "a close case", included additional facts of flight, admissions and intimidation of minor witnesses.

By way of comparison, the repudiated *Patterson* statement in the case at bar is supported by (1) another repudiated *Patterson* statement; (2) an insufficient, tacit admission as evidence; (3) a meritless argument placing the burden of disproof on defendant; and (4) the statement itself.

We construe the observation that *Peckinpaugh* was "a close case", and the court's admonition that the State should use caution when utilizing such evidence, to mean that the *Patterson* rule was extended to its limit in *Peckinpaugh*. If such is our supreme court's intent, the case at bar must fail as the facts are infinitely more weak than in *Peckinpaugh* or in any of its supportive cases. Here there is not even independent proof of the corpus delicti. Additionally, there was no physical evidence, injury, excited utterance nor screams witnessed by third persons. In truth, a whimsical *Patterson* on *Patterson* statement, and a conjecture on a denied statement is the only evidence. We are of the opinion that such evidence is not "substantial evidence of probative value from which the trier of fact may reasonably infer that the out of court statements are credible".

For the above reasons this cause is reversed and the defendant is ordered discharged.

Judgment reversed.

RATLIFF, P.J., and ROBERTSON, J., concur.