Thomas REYNOLDS, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 53A01–9008–CR–331.

Court of Appeals of Indiana,
First District.

May 21, 1991.

Transfer Denied July 23, 1991.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Thomas Reynolds appeals his convictions after a jury trial for criminal recklessness, a class D felony, and criminal deviate conduct, a class B felony, for which he received concurrent sentences of two and twelve years respectively. He asserts that his convictions which rest upon repudiated *Patterson* statements are not supported by sufficient evidence. We agree and therefore reverse and remand with instructions that the trial court enter judgments of acquittal for both convictions.

### FACTS

Reynolds' convictions arise out of two entirely unrelated incidents. Count I of the information alleged that Reynolds attempted to rape Sherry Yung by aiming a loaded handgun at her and demanding that she have sex with him. The trial court instructed the jury that they could find Reynolds guilty of the lesser included offense of criminal recklessness should they choose to acquit him of the charge of attempted rape. The jury acquitted Reynolds of attempted rape but convicted him of criminal recklessness.[1]

The facts in the light most favorable to the verdict with regard to the criminal recklessness conviction indicate that Yung never made a complaint against Reynolds. Yung had been arrested on unrelated charges and interrogated by the police regarding crimes allegedly committed by Donnie Reynolds, the defendant's brother and Yung's boyfriend. This interrogation—which was videotaped—produced the "bonus" of the present attempted rape allegation against Reynolds. During the police interrogation, Yung stated that Reynolds pointed a handgun at her and demanded sexual intercourse. In her statement, Yung indicated that she had no personal

knowledge whether the gun was loaded or not but that an eyewitness to the incident, Steve Starbuck, had told her that the gun was loaded.

The videotaped interrogation was admitted at trial. However, Yung repudiated this statement at trial testifying that the incident occurred in the context of a joke and that she knew the gun was not loaded.

Count II alleged that Reynolds committed an act of criminal deviate conduct against Erin Jones. Jones had been interrogated by the police. The interrogation was recorded on video-tape and introduced at trial. During the interrogation, Jones stated—in effect—that Reynolds had inserted his finger into her vagina against her will. Jones repudiated this statement at trial testifying that she consented to the sexual activity. Jones testified that she had lied about the consensual nature of the sexual activity with Reynolds because she feared that her conduct could compromise her romantic relationship with Reynolds' brother, Ronnie.

Additional facts are supplied as necessary.

### DECISION

■ In reviewing the sufficiency of the evidence, we consider the evidence most favorable to the verdict together with all reasonable inferences which may be drawn from that evidence and, if there is substantial evidence of probative value to support each element of the offense, the judgment will be affirmed. *Fox v. State* (1979), 179 Ind.App. 267, 384 N.E.2d 1159. The reviewing court neither weighs the evidence nor judges the credibility of the witnesses. *Traxler v. State* (1989), Ind.App., 538 N.E.2d 268. Substantive evidence of probative value, such as is necessary to support a conviction, has qualities of directness and freedom from uncertainty. *Vuncannon v. State* (1970), 254 Ind. 206, 258 N.E.2d 639. The function of an appellate court in a criminal appeal is to determine

---

1. Reynolds asserts the trial court erred by instructing the jury regarding criminal recklessness as a lesser included offense of attempted rape. However, because we have determined the evidence is insufficient to sustain the conviction for criminal recklessness, we need not determine whether the trial court erroneously instructed the jury.

whether or not evidence of guilt is substantial and of probative value, which requires more than a mere scintilla of evidence. *Id.* Evidence which only tends to support a conclusion of guilt is insufficient to sustain a conviction, as evidence must support the conclusion of guilt beyond a reasonable doubt. *Id.*

The State concedes that both of Reynolds' convictions depend upon the sufficiency of the unsworn, repudiated, out-of-court statements made by the alleged victims in the video-taped police interrogations. Reynolds and the State agree that the video-taped police interrogations of both alleged victims were properly admitted at trial as substantive evidence under the authority of *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482 because both witnesses admitted making the out-of-court statements, were present in court, and were available for cross-examination. *Watkins v. State* (1983), Ind., 446 N.E.2d 949. However, a conviction may not be predicated upon a repudiated *Patterson* statement unless there is also substantial evidence of probative value from which the trier of fact may reasonably infer that the out of court statements are credible. *Peckinpaugh v. State* (1983), Ind., 447 N.E.2d 576; *James v. State* (1985), Ind.App., 481 N.E.2d 417. A repudiated *Patterson* statement cannot be rendered credible by another repudiated *Patterson* statement or by the repudiated statement itself. *Id; Laswell v. State* (1986), Ind.App., 494 N.E.2d 981. To confer credibility upon a repudiated *Patterson* statement, independent evidence must be introduced which corroborates the repudiated *Patterson* evidence. *Id.*

In *James*, 481 N.E.2d 417, we reviewed the cases involving *Peckinpaugh* type evidence and compiled the following list describing the types of independent evidence that have been held to sufficiently confer credibility upon repudiated *Patterson* statements: excited utterances, eye witness accounts, the defendant's failure to respond to an accusation, defendant's flight, defendant's possession of stolen goods, the defendant's presence at the scene of the crime, incriminating admissions to third parties, and independent evidence of the corpus delicti. *James v. State*, 481 N.E.2d 417, 422. To add to this list, we note that in *Roby v. State* (1986), Ind., 495 N.E.2d 721, our supreme court held that the defendant's possession—near the time and place of the crime—of a very unusual and distinctive long black handgun, that broke down in the middle like a shotgun for loading, sufficiently corroborated repudiated *Patterson* statements when ballistic evidence indicated that the murder weapon, although never found, fit the above description. Also, in *Riffel v. State* (1990), Ind.App., 549 N.E.2d 1084, *trans. denied,* we held that a child victim's recanted accusations were rendered credible by corroboration with evidence that the child was infected with the same sexually transmitted disease as a person implicated in the child's statement further corroborated with expert medical testimony to the effect that the child could have contracted the disease in the manner described in the recanted statement.

Initially, the State argues that the rule of *James*, 481 N.E.2d 417, is too strict and should be "softened." The State urges that because the video-taped out-of-court statements at issue in this case were subject to critical examination by the jury, the statements themselves supply sufficient indicia of reliability to allow the jury to decide where the truth lies. Therefore, we should affirm Reynolds' convictions based upon the video-taped repudiated statements themselves.

We do not believe that exciting advances in technology should supplant the formality of sworn testimony in securing criminal convictions or further compromise the rights of confrontation and cross-examination. Moreover, we have rejected the State's request to relax the law in this area before. Although the rule of law in this area has often been characterized as the "*James* rule" and the *James* case is often cited for the rule of law about which the State complains, we believe the importance of the *James* decision is merited because of the quality, clarity, and eloquence of Judge Neal's written opinion and not because

*James* departed from supreme court precedent. The *James* court—in rejecting a similar argument advanced by the State that the law in this area should be relaxed—held:

> We construe the observation that *Peckinpaugh* [447 N.E.2d 576] was 'a close case', and the court's admonition that the State should use caution when utilizing such evidence, to mean that the *Patterson* rule was extended to its limit in *Peckinpaugh*.

481 N.E.2d at 423. We agree with *James* and will refrain from extending the *Patterson* rule beyond its limit as defined by our supreme court in *Peckinpaugh*.

## I.

### Criminal Recklessness

■ The State concedes that Reynolds' criminal recklessness conviction must be supported by evidence on the necessary element that Reynolds committed "an act that creates a substantial risk of bodily injury." IND.CODE 35–42–2–2(b)(1). Reynolds was charged by information with aiming a *loaded* handgun at Yung. We agree with dicta in *Mahone v. State* (1981), Ind.App., 429 N.E.2d 261 to the effect that placing the barrel of an *unloaded* firearm against the body of another person does not necessarily constitute the crime of criminal recklessness because such an act does not necessarily create a substantial risk of bodily harm. However, we will assume—for the purposes of this opinion—that horseplay with a *loaded* revolver constitutes the crime of criminal recklessness.

We note that in the present case no evidence was presented that any person other than Reynolds was armed with a deadly weapon. Under the circumstances of the present case, we believe that—for Reynolds' act to have created a substantial risk of bodily injury to anyone—the gun he brandished had to have been loaded. Therefore, we conclude that—under the circumstances of the present case—the State was required to prove that the handgun Reynolds aimed at Yung was in fact loaded to sufficiently convict Reynolds of criminal recklessness.

The State argues that Yung's repudiated *Patterson* statement was rendered credible by the testimony of Steve Starbuck, an eyewitness to the incident. Starbuck testified at trial that the handgun in question was a ".357" which could hold six bullets. He testified that Reynolds in fact did aim the gun at Yung but had unloaded it before doing so. Starbuck testified that he saw five bullets that had been removed from the gun but that he did not know whether or not the gun was still loaded with one bullet. He testified further that he had no knowledge that the gun had ever been loaded until Reynolds removed the bullets and as far as he knew—before Reynolds unloaded the gun—it had been loaded with only five bullets.

Starbuck's testimony does not support the conclusion that Reynolds' gun was loaded when he aimed it at Yung. Starbuck's testimony only supports the mere possibility that one bullet remained loaded in the gun. Therefore, Starbuck's testimony is insufficient in itself to support Reynolds' conviction. *Vuncannon*, 258 N.E.2d 639.

More importantly for the purposes of this case, we hold that Starbuck's testimony fails to constitute substantial evidence of probative value from which the jury could reasonably infer that Yung's repudiated out-of-court statement was credible.

Starbuck's testimony does not establish the corpus delecti of the crime of criminal recklessness. We note that the only material difference between Yung's repudiated unsworn statement and her in-court testimony concerned whether or not the gun was loaded. We note further that Starbuck's testimony—which the State seeks to use to rehabilitate Yung's repudiated out-of-court statement—more closely corroborates Yung's in-court testimony than it corroborates Yung's repudiated out-of court statement. Considering the unequivocal quality of the independent evidence required in earlier cases to rehabilitate repudiated *Peckinpaugh* evidence—as listed earlier in this opinion, we hold that Yung's repudiated, unsworn, out-of-court statement was not sufficiently rehabilitated to sustain Reynold's conviction for criminal recklessness.

The State also urges that Yung had been threatened by Reynolds' family and girlfriend not to testify against Reynolds and that this evidence rehabilitates her repudiated statement. The State has derived this evidence from Yung's video-taped interrogation. However, Yung unequivocally repudiated this statement at trial by testifying that she had not been threatened by anyone. As noted above, a repudiated *Patterson* statement cannot be rendered credible by another repudiated *Patterson* statement or by the repudiated statement itself. *Laswell,* 494 N.E.2d 981; *James,* 481 N.E.2d 417. Therefore, this evidence also fails to render credibility upon Yung's repudiated statement.

Based on the above, we must reverse and remand with instructions that the trial court enter a judgment of acquittal on the charge that resulted in Reynolds' conviction for criminal recklessness.

## II.

### Criminal Deviate Conduct

As stated above in the FACTS section, Erin Jones stated during a video-taped police interrogation that Reynolds placed his finger in her vagina against her will. However, Jones testified at trial that she consented to this sexual activity. Jones testified that she had lied about the consensual nature of the sexual activity with Reynolds because she feared that her conduct could compromise her romantic relationship with Reynolds' brother. Based on this evidence, Reynolds was convicted and sentenced to twelve years imprisonment.

The State argues Jones' repudiated statement was rendered credible by a statement Jones made to her mother. Jones' mother testified at trial that Jones had stated that she was the person mentioned in a newspaper report of the incident and that she had been mad at Reynolds for a month because he had made a pass at her.

We note that Jones statement to her mother corroborates her in-court sworn testimony. Jones' statement that she was mad at Reynolds because he "made a pass" at her does not corroborate the allegation that the sexual contact was nonconsensual. That Jones was mad is consistent with her concern that her liaison with Reynolds would adversely affect her romantic relationship with Reynolds' brother.

More importantly for the purposes of this opinion, we hold that Jones' mother's testimony does not constitute substantial evidence of probative value from which the trier of fact may reasonably infer that the out of court statement was credible. In the present case, there is no independent proof of the corpus delecti of the crime nor is there any evidence of the unequivocal nature and quality that we and our supreme court have held will sufficiently rehabilitate a repudiated *Patterson* statement. Therefore, we must reverse and remand Reynolds' conviction for criminal deviate conduct with instructions that the trial court enter a judgment of acquittal on this charge.

Based on the above, we hold that Reynolds' convictions for both criminal recklessness and criminal deviate conduct must be reversed. We remand with instructions that the trial court enter a judgment of acquittal for each of these charges.

Judgment reversed.

BAKER, J., concurs.

CHEZEM, J., concurs in result.