### In re the Matter of D.B., a Child Alleged to be a Delinquent Child.

**D.B., Appellant–Juvenile,**

v.

**STATE of Indiana, Appellee–Petitioner.**

**No. 71A05–9406–JV–211.**

Court of Appeals of Indiana,
Fifth District.

April 10, 1995.

Louis L. Hegyi, South Bend, for appellant.

Pamela Carter, Atty. Gen., Dana A. Childress–Jones, Deputy Atty. Gen., Indianapolis, for appellee.

### OPINION

BARTEAU, Judge.

The trial court found D.B. to be a delinquent child with regard to the commission of the crime of criminal recklessness. D.B. claims on appeal that the evidence was insufficient to prove beyond a reasonable doubt that his conduct with a gun created a substantial risk of bodily injury to another.

### FACTS

After quarreling with a schoolmate, D.B. and another youth approached the home of the schoolmate who was sitting on the front porch with his family. After exchanging words with his schoolmate from across the street, D.B. pointed a handgun at the people sitting on the front porch. D.B. fled the scene when the police were summoned, but was later apprehended. The police never recovered the weapon.

The State filed a Petition Alleging Delinquency, charging D.B. with carrying a handgun without a license, a Class A misdemeanor, and criminal recklessness, a Class D felony. The trial court found D.B. a delinquent child with regard to both counts. D.B. does not challenge the allegation of unlawful possession of a handgun, and limits his appeal only to the finding of criminal recklessness.

### DISCUSSION

Criminal recklessness is set out in Ind.Code 35–42–2–2, which states in relevant part:

(b) A person who recklessly, knowingly or intentionally performs:

(1) an act that creates a substantial risk of bodily injury to another person

\*      \*      \*      \*      \*      \*

commits criminal recklessness, a Class B misdemeanor. However, the offense is a

\* \* \* \* \* \*

(2) Class D felony if it is committed while armed with a deadly weapon.

Any handgun, whether it is loaded or unloaded, is a deadly weapon. I.C. 35–41–1–8. However, previous cases have held that an unloaded firearm does not create a substantial risk of bodily injury in the context that it cannot be used to shoot someone. *See Warren v. State* (1993), Ind.App., 615 N.E.2d 500; *Reynolds v. State* (1991), Ind.App., 573 N.E.2d 430, *trans. denied; see also, Mahone v. State* (1981), Ind.App., 429 N.E.2d 261; *cf., Warren,* 615 N.E.2d at 503 (Sharpnack, C.J., dissenting) (one may use an unloaded handgun to "pistol whip" another, creating a substantial risk of bodily injury).

D.B. argues that the State failed to prove the gun was loaded and therefore did not show that he created a substantial risk of bodily injury. D.B. bases this argument on recent decisions involving similar circumstances.

In *Reynolds,* we held that "the State was required to prove that the handgun ... was in fact loaded to sufficiently convict [the accused] of criminal recklessness." 573 N.E.2d at 433; *see also, Mahone,* 429 N.E.2d at 263. Similarly, in *Warren,* we held that merely pointing an unloaded firearm at another, without more, does not create a substantial risk of bodily injury. 615 N.E.2d at 502. However, each of those decisions is limited to their circumstances, and D.B. seeks to extend their application beyond the scope of their contexts.

In *Reynolds,* the Information charging criminal recklessness included the specific allegation of pointing a *loaded* handgun at another. 573 N.E.2d at 433. In order to prove the crime *as charged,* the State was required to prove the gun was loaded. *Id.* D.B. improperly reads *Reynolds* as requiring the State to prove a loaded weapon in every prosecution of criminal recklessness involving a firearm. In D.B.'s case, the Petition Alleging Delinquency does not specify that the gun was loaded, and the specific holding of *Reynolds* does not apply.

■ In *Warren,* we found that there was no substantial risk of bodily injury after conclusive evidence was presented at trial demonstrating that the gun the accused pointed at another person was not loaded. 615 N.E.2d at 502. Like *Reynolds, Warren* does not hold that the State must prove a loaded weapon in every prosecution of criminal recklessness involving a firearm. Rather, evidence of an unloaded weapon may serve to disprove the accused created a substantial risk of bodily injury. *Id.*

■ The State must sustain its burden of proof on each element of the offense charged, and such elements may be established by circumstantial evidence and logical inferences drawn therefrom. *Mitchell v. State* (1990), Ind., 557 N.E.2d 660, 662. To carry its burden of proving the charge of criminal recklessness against D.B., the State was required to demonstrate that D.B. recklessly, knowingly or intentionally pointed a handgun at or in the direction of his schoolmate, creating a substantial risk of bodily injury.

■ It is axiomatic that the State carries the burden of proof throughout the entire proceeding. But, once the State has presented a *prima facie* case showing guilt, the burden of going forward shifts to the accused to revive reasonable doubt. *Peabody Coal Co. v. Ralston* (1991), Ind.App., 578 N.E.2d 751, 754 (citing *Denton v. State* (1979), 182 Ind.App. 464, 471, 395 N.E.2d 812, 813, *aff'd on reh'g,* 398 N.E.2d 1288, 1289). The prosecution presented unrefuted evidence that D.B. had quarrelled with his schoolmate. Afterwards, D.B. stood across the street from his schoolmate's house and exchanged words with the schoolmate who was sitting on the front porch with his family. D.B. then produced a handgun and pointed it in the direction of those sitting on the porch. Although the gun was never recovered, there was no evidence presented demonstrating that the gun was not loaded. Under the circumstances of this case, it was within the breadth of the fact finder's discretion to draw the reasonable inference that the gun was

loaded and created a substantial risk of bodily injury.[1]

AFFIRMED.

SHARPNACK, C.J., concurs.

DARDEN, J., dissents with opinion.

DARDEN, Judge, dissenting.

I respectfully dissent. To sustain a conviction for the offense of Criminal Recklessness, the State has the burden of proving beyond a reasonable doubt each material element of the crime charged. *Padgett v. State* (1978), Ind.App., 380 N.E.2d 96, 97.

The essential and material elements that the State had to prove to convict D.B., beyond a reasonable doubt, of the crime of criminal recklessness as a class D felony are found in Ind.Code 35–42–2–2 as follows:

> Sec. 2. (a) A person who recklessly, knowingly, or intentionally performs an act that creates a substantial risk of bodily injury to another person commits criminal recklessness, a Class B misdemeanor. However, the offense is a:
>
> \*    \*    \*    \*    \*    \*
>
> (2) Class D felony if it is committed while armed with a deadly weapon.

The totality of the State's evidence in support of its case-in-chief was presented through the testimony of J.R., another juvenile, and his aunt, Lisa Gunn. Approximately two days prior to the incident in question, D.B. had gotten into a fight with J.R. regarding his sister. (R. 24). D.B. and two of his companions appeared at a residence across the street from J.R.'s home and, according to J.R.'s testimony on direct examination, the following occurred:

Q. . . . . . What happened then?
A. Somebody—they pulled out the gun.
Q. They pulled out the gun? Did you see who had the gun?
A. No.
Q. You didn't see who had the gun?
A. No.
Q. Did you see a gun?

A. Yes, I saw a gun.
Q. Well, how was it that you saw a gun?
A. I ran in the house.
Q. Pardon?
A. I ran in the house.
Q. Well, before you ran in the house, where did you see the gun?
A. In one of their hands.
Q. In one their hands? Tell us about that. Where were you when you saw this gun?
A. In front of the house with all my brothers and sisters on the porch.
Q. And A. and D. and this other person, did they come together?
A. Yes.

\*    \*    \*    \*    \*    \*

Q. Was something said?
A. No.
Q. You saw a gun and ran in the house?
A. Yes.
Q. Did you see what kind of gun it was?
A. No.
Q. Well, was it a rifle like a long gun or short gun?
A. Little, short gun.
Q. A pistol?
A. Yes.
Q. Was it shiny or black or blue or what color?
A. I don't know.
Q. Well, did you see enough of it—was it shiny like this microphone (indicating)?
A. (no response)
Q. Was it the color like part of this witness area?
A. I think, yes, black.
Q. Was it pointed at you?
A. It was pointed at over where we was at.
Q. Were there any gun shots?
A. No.

---

1. As noted by the dissent, an accused does not bear the burden of proving the gun was not loaded as an affirmative defense. However, from the evidence presented at trial, the fact finder could conclude beyond a reasonable doubt that the firearm was loaded and created a substantial risk of bodily injury. Such an inference is reasonable under these circumstances.

Q. It was pointed over to where you were at?

A. Yes.

Q. Do you remember calling the police?

A. Yes.

Q. Do you remember who you told the police had the gun?

A. No.

Q. Don't you? But one of the three people had the gun?

A. Yes.

Q. You are sure of that?

A. Yes.

Q. Are you afraid right now, J.R.?

A. No.

Q. You are not afraid?

A. (witness shakes head)

Q. Are you afraid of D.B.?

A. No.

Q. No?

A. No.

(R. 23–26).

The defense did not cross examine J.R. Subsequent to J.R.'s testimony, the State presented the testimony of his aunt, Lisa Gunn, who testified to the following:

Q. I want to direct your attention back to this past May 6th about 2:00 or 2:30 in the afternoon and ask you if you were at or around J.R.'s home on Carlisle Street?

A. Uh-huh, 521.

Q. Did you see three young men approach his house?

A. Yes, I did. Well, they didn't come to his house, they were across the street in front of the house. Like J.R. said, they had an incident with his sister and D.B. was in the middle and there was a guy on each side of him, and he was the one that had the pistol.

Q. D.B. had the pistol?

A. Yes, he did.

Q. Where were you when all that was happening?

A. I was standing—well, when they had came out—my niece had came—well, it was like J.R. and D.B. and them was out there and they wanted to fight, you know.

They had little words, and I don't really recall what was said because they had a few words and stuff, and he pulled out the pistol. I was out on the porch because all my nieces and nephews was outside plus neighbors' kids, and I was telling them to go in the house. And, at the present time, J.R.'s mother was there and she was the one that called the police.

Q. Did you get a good look at the gun?

A. I don't know of guns, no—

Q. Well, let me ask you—

A. No, not really, because they was across the street and I was on the porch.

Q. Could you tell how big it was?

A. It was like that (indicating).

Q. Could you show the Judge with your fingers how big it was?

A. I'd say it was a handgun, you know, so—

Q. Do you know the difference between calibers, do you know the word, caliber?

A. Huh-uh. I just heard of them. No, I don't know.

Q. Did you see what he did with the gun?

A. At the present moment when we were out there and I was telling J.R. to stop and J.R. went in the house and said, you know, he was coming back out, you all stay in because I said, you never know what will happen with a gun. At the present time, I was getting them in the house and stuff, and then when he heard the police was coming, they all took off.

Q. Did you see D.B. point the gun in any way?

A. It was pointed like outwards.

Q. Was it pointed across the street to where—in your direction?

A. In our direction towards us, but not at no certain person. Everybody was just out there so—

Q. There were a lot of people out there?

A. J.R.'s sister, his brother, his younger brother and sister, plus some of their friends.

(R. 28–31).

Again, the defense elected not to cross examine the State's witness. The evidence,

herein, is unrefuted that D.B., while standing across the street, pointed a gun of some type at or in the direction J.R. or others. (R. 30). The gun was never recovered and the State failed to present any probative evidence to substantiate: 1) whether it was a toy, pellet, or a real gun;[1] 2) whether the gun was loaded or unloaded; 3) whether the gun was operable or even capable of firing a projectile by D.B., hence, whether it created a substantial risk of injury to another person.

Generally, criminal or penal statutes are to be strictly construed against the State and in favor of the defendant. In this writer's opinion, the State failed to carry its burden of proof on all the essential and material elements of the crime of criminal recklessness. The State's evidence failed to prove beyond a reasonable doubt, that D.B.'s conduct in this case of pointing a gun, standing alone, created a substantial risk of bodily injury to J.R. or to anyone else.

The majority's decision in this case seems to be in direct conflict with several recently decided cases by this court involving defendants who were charged with criminal recklessness involving the use of handguns. Admittedly, the facts in *Warren v. State* (1993), Ind.App., 615 N.E.2d 500 and *Reynolds v. State* (1991), Ind.App., 573 N.E.2d 430 differ from the facts in this case; however, in both cases, in essence we held that the State bore the burden of proving, beyond a reasonable doubt, that the guns in question were capable of creating a substantial risk of bodily injury to another person. Specifically, in *Warren, supra,* we held the following:

> We agree with the reasoning of the courts in *Mahone* and *Reynolds* and hold that merely placing an unloaded firearm against another, without more, does not create a substantial risk of bodily harm. The evidence here shows that Warren placed the unloaded gun against Mr. Sadler's stomach and waved the gun in his presence. This evidence is insufficient to support a conviction for criminal recklessness because the State failed to prove that there was a substantial risk of bodily injury. The State argues, however, that mere use of a handgun can cause the partici-

pants to act in ways that endanger them; thereby, creating a substantial risk of bodily injury. "Something is substantial if it has 'substance or actual existence.'" *Elliott v. State* (1990), Ind.App., 560 N.E.2d 1266, 1267 (quoting Webster's Third New International Dictionary 2280 (1966)). Thus, a substantial risk of bodily injury may not be proven by mere speculation for which there has been no evidence presented at trial. *Elliott,* 560 N.E.2d at 1267.

*Id.* at 502.

I agree with the majority that it is axiomatic that the State must carry its burden of proof throughout the entire proceeding. I disagree that once the State has presented a *prima facie* case, as in this case, showing the possibility of guilt, the burden of going forward shifted to the defendant to revive reasonable doubt. The presentation of a *prima facie* case merely prevents the State's case from being dismissed by a directed verdict in favor of the defendant. *Holliday v. State* (1970), Ind., 257 N.E.2d 679. The defense in this case was not required to raise or present an affirmative defense; hence, there was no duty or burden on it to prove or disprove the status of the gun, i.e., whether it was loaded or unloaded; operable or inoperable; or whether it was capable of creating a substantial risk of bodily injury to another or to "revive reasonable doubt." It is fundamental that the burden of proving, beyond a reasonable doubt, all the material and essential elements of the crime of criminal recklessness remained with the State throughout the entire trial. *Martin v. State* (1973), Ind.App., 300 N.E.2d 128. The burden of proof on the prosecution never shifted to the defendant in this case, *Smith v. State* (1969), Ind., 249 N.E.2d 493; and based upon the facts of this case, we should not create a rule to shift such a burden to the defense. *Hill v. State* (1937), 212 Ind. 692, 11 N.E.2d 141.

I would reverse D.B.'s conviction for the offense of criminal recklessness.

---

1. This writer is aware that on appeal D.B. is not attacking the status or the type of gun involved and, perhaps, he has waived that issue; however, I merely point this out to emphasize the weakness in the State's case-in-chief.